[Criminal No. 829. Filed December 2, 1935.]

[52 Pac. (2d) 476.]

WILLIAM WASHINGTON, Appellant, v. STATE OF ARIZONA, Respondent.

Mr. Lemuel P. Mathews, for Appellant.

Mr. John L. Sullivan, Attorney General, and Mr. Lloyd J. Andrews, Assistant Attorney General, for the State.

LOCKWOOD, C. J.—William Washington was charged by the county attorney of Maricopa county with the crime of burglary in the first degree. He was tried, convicted and duly sentenced, whereupon this appeal was taken.

The evidence, construed as strongly as possible in support of the judgment as, under our rule, we must construe it, may be stated as follows: William Washington resided at 13th and Madison Streets, in Phoenix, Arizona. On the 17th day of January, 1935, he had a conversation with two colored boys, under the age of eighteen, Downing and Childers by name, with reference to their accompanying him to the country to secure some hay. They met at Washington's home about 8 P. M., and went with him on an automobile truck to the premises of McReynolds Farm Company, about two miles east of Laveen. On

these premises was a structure where the company kept its baled hay. It was surrounded by a four wire fence, so Washington climbed through the fence and dragged some fifteen bales of hay out of the storage building to the truck, the colored boys placing it thereon. This is shown by the evidence of Downing, who was obviously an accomplice of the defendant. In addition thereto, there was independent testimony to the effect that one Albert McClellan, about 9 o'clock in the evening of the 17th, noticed a truck standing near the place where the hay was kept, with a large pile of baled hay beside it. He immediately called his son, Dyton McClellan, and one R. L. Smith, and they drove up the road running to the place where the hay was kept. When they came within thirty feet of the parked truck, they turned on the lights of their car and saw three men run around the side of the truck. One of them disappeared, but the other two, being Downing and Childers, were caught. The next morning Dyton McClellan found two coats lying near the place where the hay was found, one of which was afterwards identified by defendant as being his. It also appears from the testimony of defendant himself that the Ford truck seen by the McClellans and Smith was one he had been using all of the 17th, and up to about 8:15 that night. The structure from which the hay was taken was referred to by the witnesses at times as a "barn" and at other times as a "shed." It was used for the purpose of storing hay, and at the time of the alleged burglary had some thirty or forty tons of baled hay in it. But nowhere in the record do we find any specific description of the structure itself by any witness. No objection was made by the defendant at the time of trial that the structure from which the hay was taken was not a "barn" within the

meaning of the statute defining burglary, nor was any instruction asked defining what a barn was.

There are some twelve attempted assignments of error. The majority of these are of such a nature that they do not conform to the rules of this court, and are so general in their terms that we cannot determine therefrom the specific error complained of by defendant. There are a few, however, which, while somewhat indefinite in form, raise questions which we may consider, and we discuss them.

The first is that the evidence shows conclusively that the structure from which the burglary was alleged to have been committed was not a "barn" but a "shed," and that stealing from a "shed," under our statute, is not burglary. The point is well taken if the evidence shows that the structure was not a barn but a shed. As we have stated, there is no testimony in the record which describes it; the witnesses at times referring to it as a barn and at others as a shed. It does appear, however, that it was used for the purpose of storing hay, and at the time of the alleged burglary contained some 30 or 40 tons of baled hay. The word "barn" is defined as being "a covered building used chiefly for storing grain, hay and other farm produce." Webster's New International Dictionary. We think the fact that it was usually (though not always) referred to by the witnesses as a barn, and the evidence that it was used for the purpose of storing hay, was sufficient, in the absence of proof to the contrary, in justifying the jury in concluding that it was a barn within the meaning of the statute.

The next matter which we consider is whether or not there was sufficient evidence to sustain the verdict. It is argued that the testimony is

insufficient under section 5055, Revised Code 1928, which reads as follows:

"Corroboration of accomplice. A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence which, in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

Under this section a defendant cannot be convicted on the testimony of an accomplice unless there is other evidence independent of that of the accomplice which "tends to connect the defendant with the commission of the offense," and it is urged that the required evidence is not present in this case. We cannot agree with defendant in this contention. His own testimony shows that he was using the truck which was found near the place of the burglary up to within an hour of the commission of the crime, and that a coat, which was found near the barn the next morning, belonged to him. It also appears that there was some person engaged in the burglary, in addition to Downing and Childers, but that he escaped from the scene of the crime. We think this evidence is ample to justify a reasonable person in believing that defendant had a very definite connection with the burglary, even if his accomplice had never testified at all. It is true that part of this evidence was drawn from defendant himself on cross-examination, after the state had rested and a motion for an instructed verdict had been denied. But defendant voluntarily offered himself as a witness in his own behalf, which waived any error on this point, if the evidence as a whole was sufficient to sustain the judgment. *Rain* v. *State,* 15 Ariz. 125, 137 Pac. 550.

■■ The third objection is extremely ambiguous in its nature, but, as nearly as we can gather, it seems to be that since the trial judge had previously heard the accomplices in juvenile court, and had determined that they were juveniles, he was not qualified to sit in the trial of Washington. No objection was made as to his qualifications until this appeal was taken, and we, therefore, cannot consider it in this court. But even if the question had been properly raised, we see no reason why the trial judge should not have heard the present case. His personal opinion as to the guilt or innocence of the defendant could have had nothing to do with the verdict of the jury, since it does not appear that he made any expression in their presence upon the subject.

This disposes of all questions which, under the most liberal consideration of the assignments of error, we are permitted under our rules and decisions to consider.

Since no reversible error appears in the record, the judgment is affirmed.

McALISTER and ROSS, JJ., concur.