[Criminal No. 837. Filed November 2, 1936.]

[61 Pac. (2d) 1015.]

FRANK DUARTE, Appellant, v. STATE OF ARIZONA, Respondent.

Mr. William J. Fellows, for Appellant.

Mr. John L. Sullivan, Attorney General, and Mr. W. Francis Wilson, Assistant Attorney General, for the State.

ROSS, J.—Frank Duarte was convicted of murdering G. W. Johnston, at Casa Grande, Pinal county, Arizona, and given a death verdict and sentence. He has appealed.

The principal ground for the appeal is that he was convicted upon the testimony of an alleged accomplice, without any or sufficient corroboration. If his contention in this respect is correct, the judgment of conviction should not be allowed to stand.

The prohibition against a conviction of an offense upon the uncorroborated testimony of an accomplice is statutory. Sec. 5055, Rev. Code 1928. Under this section the corroboration of the accomplice's testimony that an offense was committed, or of the circumstances thereof, is not sufficient. It must be of facts or circumstances connecting, or tending to connect, the defendant with the acts constituting the offense. We have said in *Reynolds* v. *State,* 14 Ariz. 302, 127 Pac. 731, 732 (quoting from *People* v. *Ames,* 39 Cal. 403):

"The corroborating evidence must, of itself, and without the aid of the testimony of the accomplice, tend, in some degree, to connect the defendant with the commission of the offense. It need not, of course, be sufficient to establish his guilt, for, in that event, the testimony of the accomplice would not be needed. But it must tend in a slight degree, at least, to implicate the defendant. The purpose of the statute was to prohibit a conviction unless there was some evidence, entirely exclusive of that of the accomplice, which, of itself, and without the aid of the accomplice, tended to raise at least a suspicion of the guilt of the accused."

See, also, *Taylor* v. *State*, 35 Ariz. 317, 277 Pac. 978; *Cruz* v. *State,* 40 Ariz. 436, 14 Pac. (2d) 247; *Washington* v. *State,* 46 Ariz. 446, 52 Pac. (2d) 476. Bearing this rule in mind, we give below a *résumé* of the facts and circumstances which, entirely apart

from the testimony of the accomplice, implicate defendant in the commission of the crime charged.

Since human life is involved, we have read and carefully scrutinized the whole transcript of the testimony. It shows that on the 9th of July, 1935, at Casa Grande, G. W. Johnston, who was a small merchant, was, while in his store building in which he also lived, at or near 9 o'clock at night, beaten to death. A nearby neighbor discovered what had happened within ten or fifteen minutes and gave the alarm. From the character of the wounds it was evident his injuries were inflicted with a blunt instrument. He had been struck several times on the head. Four lacerations exposed the skull and three were not so deep. The right maxilla was crushed. Not long thereafter he lapsed into unconsciousness and so remained until the following afternoon, when he died.

In the bedroom occupied by deceased was found his glasses on the floor, with some blood on them, and there was blood on "the front part of the mattress and sheet and in front of the bed the floor was literally covered with blood."

Defendant and one Ralph Romandia were arrested at Chandler, Arizona, on July 11th and charged with the commission of the crime. Romandia made a full confession and said that he and defendant committed it. No third person saw the act committed. We have only Romandia's word that he and defendant Duarte killed and murdered Johnston. But defendant, while testifying as a witness in his own behalf, admitted that he was with Romandia on the 9th, 10th, and 11th of July. Their stories as to their whereabouts and doings during these three days are in the main the same, except Romandia says that they together committed the offense and defendant denies that he participated in it. Their story is that they left Chandler

together early in the morning of July 9th and traveled together to Casa Grande, first by freight train to Coolidge and from there by ''deadheading'' rides on automobiles to Casa Grande; that they reached Casa Grande at 11:30 A. M. of that day, and went directly to the home of Mrs. Elisa Romandia, mother of Ralph, and stayed there the rest of the day and that night; that they left the house together between 6 o'clock in the evening and dark and went to a junk pile and got a piece of iron pipe; that they returned to the Romandia home and stayed until after dark, when they left, taking with them the piece of iron pipe that they had earlier obtained from the junk pile; that their errand at this time was to commit a burglary. But defendant Duarte says, when Romandia mentioned Johnston's store as the building to be burglarized, ''I didn't like the idea. I throwed the pipe. I can't go for that.''

They left Casa Grande together on a freight train, on the afternoon of July 10th, for Yuma via Gila Bend. They stayed all night at Yuma and together, on the 11th, returned by train to Chandler.

Different persons saw Romandia and defendant together in Casa Grande on the afternoon and evening of July 9th and also on the 10th. Witnesses testified to seeing two persons, shortly before sundown on the 9th, at a junk pile examining pieces of iron or pipe. A piece of iron pipe was introduced in evidence, which Romandia testified was the pipe with which Johnston was beaten to death.

The clothing worn by defendant consisted of cream-colored pantaloons, light blue shirt, and black shoes. Romandia wore a pair of white pantaloons with dim herringbone stripes.

Romandia's mother left her home to go visiting some time after 6 o'clock dinner, and when she left the defendant and her son Ralph were at her house. She

returned home about 11 o'clock at night and found the defendant and her son in bed in the back-yard of her home. Later several officers called at the Romandia home and questioned the defendant and Romandia as to their movements, and one of the officers testified that on or near the bed occupied by these men he found two pairs of pants; one described as a herringbone stripe, and the other as blue overalls. This officer testified that the herringbone striped pants belonged to Romandia; that he asked whose the overalls were but received no answer; that he examined both pairs and discovered nothing peculiar or strange with either. Romandia testified that the overalls belonged to his brother, and that when they returned home the defendant wrapped his pants in a paper and put them under a box in the bathroom and put on the blue overalls belonging to his brother; that the reason he made the change was that there was blood on the right knee of his pants.

Mrs. Romandia testified that during the night she went to the bathroom and discovered defendant Duarte's pantaloons secreted in or under a box, examined them, and found blood on the right leg; that the following morning defendant went into the bathroom, washed the right leg of the pants, and hung them in the bathroom on a small string to dry.

After defendant was arrested, the shirt that he wore on the night of July 9th was discovered to have three small spots of blood on the shoulder.

██ An analysis of the evidence as stated above shows that the testimony of Romandia is very strongly and quite convincingly corroborated by the defendant himself. He admits the continuous three-day association with Romandia; admits their common design to commit the serious crime of burglary or robbery; that he and Romandia had gotten an iron pipe from a junk

pile; that he really and actually left the Romandia house with Ralph Romandia with the intention and purpose to commit a felony. Then, there was the blood on his pantaloons, the secreting of them, and later the washing of the part thereof on which the witnesses had seen blood, the donning of a different pair of pants. The bloody clothing and his own admissions, while perhaps not enough, standing alone, to sustain the conviction, certainly are sufficient in connection with the testimony of Romandia, his accomplice, to authorize the verdict returned by the jury.

The other suggestions of error (there are no assignments conforming with the court's rules) are that the court erred in the admission of evidence over defendant's objection, in sustaining objections to competent and material evidence offered by defendant, and in overruling defendant's motion for a mistrial based on the misconduct of counsel for the State.

Defendant's counsel asked Ralph Romandia on cross-examination this question: "Did you know Mr. Johnston said there was one negro attacked him?" Upon objection by the county attorney that the testimony sought was immaterial, the witness was not permitted to answer the question. While the objection was not the one that should have been made, clearly the ruling was right. It called for hearsay or common rumor, and not a statement made to witness by Johnston. The court said to defendant's counsel: "If you want to show a conversation this man (the witness) had with Johnston, you may do so. . . . You must lay a foundation before you can show a conversation." Defendant's counsel refused to lay any foundation and the court's ruling was not changed. Defendant certainly has no ground of complaint. The rulings of the court were eminently fair and in exact accord with the law.

An examination of the brief of defendant's counsel does not indicate what other evidence, if any, was improperly rejected, nor any improper evidence that was admitted over his objection.

■ The misconduct of the county attorney, we ascertain from the body of defendant's brief, is that, as he asserts, the county attorney said in his argument to the jury: "That man there with that face wouldn't be afraid of anything." The county attorney, on the contrary, submitted that what he said was: "That that man with that face could not be talked into doing anything." The court denied the motion for a mistrial and said: "Gentlemen of the jury, that remark will be stricken from the record, and you will disregard any reference to it and not consider it in the case." Since the words of the county attorney in his argument were not stenographically reported, and what he actually said is in dispute, we cannot say that the argument was not proper. At all events, the jury was told by the court to disregard whatever was said, whether proper or improper.

We have given the defendant's appeal the consideration its importance to him deserves and find that no error was committed in his trial.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.