## STATE v. WHITELY.

No. 6191. Decided February 14, 1941. (110 P. 2d 337.)

*Herbert B. Maw,* of Salt Lake City, for appellant.

*Wade M. Johnson,* of Ogden, *Grover A. Giles,* Atty. Gen., and *Zelph S. Calder,* Asst. Atty. Gen., for respondent.

MOFFAT, Chief Justice.

The defendant, Austin Whitely, is charged with having committed the crime of burglary in the second degree. Whitely waived a jury trial and stated, through counsel, the desire to have the cause tried by the court. A hearing was had and the defendant was found guilty of burglary in the second degree. An appeal brings the matter to this court.

It is admitted that someone committed a burglary in

Farmington on the night of November 30, 1938. The identity of the presumed burglar is the only issue in the case. A man was seen coming from the house which had been burglarized about 7:15 P. M. on the evening carrying something under his arms; Deputy Sheriff Oviatt had been lying in wait and had inspected a car standing near the scene of the burglary which was thought to be the car of one who had been committing frequent burglaries in that vicinity; the tread of the tires, the radio antenna, the make of the car and the interior were noted. The deputy encountered the presumed burglar and the burglar in turn dropped some of the articles he was carrying and pulled a gun on the officer. The hat of the burglar was turned down to cover his eyes; the evening was dark; the nearest light, high on the street corner, was some 230 or 240 feet away. The officer was within nine or ten feet of the burglar when Oviatt was ordered to drop his spot light. The burglar moved in a semicircle around the officer keeping some ten feet distant from him all the time. The burglar fled, the officer opened fire on him, the burglar jumped into the standing car and drove away.

In making the report of the happenings, the deputy sheriff described the man some three inches shorter than the accused actually is and as being "short and thin", when he is actually tall, five foot eleven inches. Oviatt did not notice the license number on the car during his inspection or whether or not the car was a coach or sedan model. After having talked with Salt Lake officers about the record of the accused and having seen pictures of him the deputy sheriff identified Whitely as the burglar at a show up. The model of the car reported in the officer's report after the burglary was changed after an inspection had been made of Whitely's car.

Whitely denied having been in Farmington on the night of the burglary. He denied the burglary. Evidence was introduced that Whitely had been in Salt Lake during the whole of the afternoon of November 30th, aiding Mrs. Lyman Cromer, his sister, in making a purchase of an automobile. The automobile salesman testified that Whitely had

been with them during the afternoon and up until about five o'clock. A son of Mrs. Cromer said that Whitely was at home when he came from school at about five in the evening. Shortly thereafter Mrs. Cromer left with Mrs. Ann Jones for a ride and Whitely was at home when they left. Mrs. Jones took Mrs. Cromer out to Sugar House with her to pick up her husband who works at Petty Motor Company. He was supposed to get off at six o'clock but was late leaving. The three of them then drove Mrs. Cromer home and when they stopped in front of the Cromer residence Mrs. Jones saw Whitely coming out of a neighborhood lunch stand.

Mr. Lyman Cromer testified that when he returned home from work Whitely was home and that Whitely advised him that his wife had purchased the "pink car." Mr. Cromer testified that he remained home about half an hour and went to visit neighbors and play cards. Whitely advised Mrs. Cromer that her husband had left in a huff. Mrs. Cromer told Whitely to go to the neighbors and tell her husband that she would forfeit her down payment on the car if he thought it was not a good deal. Whitely went to the neighbors and told Mr. Cromer what his wife had said and returned to the Cromer residence. Shortly thereafter Mr. Cromer returned home and he and his wife began a quarrel about the "pink car." The son suggested that he and Whitely go to a show and get away from the quarrel. They went to see "Alexander's Ragtime Band."

The next day Mrs. Cromer received delivery of the car and went to the bank to get the money out of the safe-deposit box. While she was in getting the money, the auto salesman and her son heard the newsboys start crying about the terrible school bus accident that happened in Salt Lake County that morning, December 1.

Mr. and Mrs. Cromer fixed the time Whitely was with them by his being with them the night and day the "pink car" was purchased, which caused such a family furor. The salesman fixed the day as the one he was paid for the car which was the one following the day he had been with Whitely and Mrs. Cromer making the deal. Mrs. Jones fixed the

night she saw Whitely as she and her husband were in a hurry to get to the P. T. A. meeting to be held in the Irving School and they were barely able to get there by seven thirty and they did not stop to cook dinner. The son fixed the night as the one he and Whitely went to see "Alexander's Ragtime Band" when his folks were quarreling about the "pink car."

The findings of fact made by a jury, or the trial court sitting as a jury, when supported by substantial evidence, are final and will not be disturbed by this court. Such findings must be in accordance with the instructions on the law, as given by the court. In this jurisdiction the court is not required in a case tried to the court, without a jury, to express what the instructions to the jury would be were the case tried to the jury. However, in the instant case, the court did express what he thought the law to be and made his findings in accordance with such interpretation of the law. He found the defendant guilty.

The court interpreted the law governing the case as follows:

"* * * taking this case, as it stands now, unquestionably the witness the Deput Sheriff, Mr. Oviatt, is it,—he has positively identified the defendant as the person that was present there at the time he speaks of. He identifes him as the man. Now, the defendant has denied that. Of course, there is that positive proof, and then there is that denial; then, again, I state, there is additional proof, which may be circumstantial in the case, that is, the identification of the automobile; that defendant is found with an automobile that is quite similar to the automobile that Mr. Oviatt admits, or as it is described as being parked there that evening. That would be a circumstance to be considered in connection with his positive denial. * * * I am going to hold in this case, that there has been a prima facie case made, and, that *there is in the alibi no such an alibi that would account for all of the time;* and I am going to hold that *the burden of proof is on the defendant to establish that alibi*, by competent evidence, and not on the State. In view of that holding, I am going to find the defendant guilty as charged in the information.

*        *        *

"I am basing my decision entirely on the burden of proof and alibi; in other words, *if the State had to carry the burden of proof as against this alibi, and to show that the alibi was not true, I am in*

*doubt if the evidence would be sufficient.* I am not taking into consideration the defendant has a criminal record. I am giving full credit to that, except he has admitted denial that has been corroborated to some extent by the identification of the automobile. *If I didn't have this opinion, I would probably render a different opinion* in this case."

Chapter 120, Laws Utah 1935, has been construed by this court, and in construing the act the court ■ stated:

"The defense of alibi has always been considered a legitimate and proper defense. It frequently happens that is the only defense an accused has. That it might lend itself to fraud and perjury was recognized by our Legislature. This does not say however, that chapter 120, Laws of Utah 1935, was intended as a disparagement of the defense and places a defendant invoking such defense under a handicap as to the quantum of proof necessary to convict, that would not otherwise be the case had he not invoked such defense. Its purpose clearly is to erect safeguards against the wrongful use of the defense of alibi and give the prosecution time and information to investigate the merits of such defense. With such safeguards the natural effect would be to give greater weight, not less, to an alibi which such investigation has failed to refute." *State* v. *Waid*, 92 Utah 297, 67 P. (2d) 647, 651.

There is no expression of an intention, either implied or expressed, on the part of the Legislature, to shift the burden of proof from the State to the defendant. As stated, the purpose of the statute

"clearly is to erect safeguards against the wrongful use of the defense of alibi and give the prosecution time and information to investigate the merits of such defense."

The trial court in the instant case stated that

"if the State had to carry the burden of proof as against this alibi, and to show that the alibi was not true, I am in doubt if the evidence would be sufficient."

The state, in all cases where the presence of the accused is necessary to render him responsible, must prove

that he was there as part of its case; and if from all the evidence there exists a reasonable doubt of his presence, he should be acquitted.

"The so-called 'defense of alibi' is a defense only in the sense that any contradiction of facts which the government must prove to establish guilt may be called a 'defense.' The burden of proving guilt must always rest upon the prosecutor.   *   *   *

"To charge that a defendant has the burden of establishing an alibi is plainly erroneous, for the burden of proving guilt never shifts from the government. *Glover* v. *United States*, [8 Cir.] 147 F. 426, 431, 8 Ann. Cas. 1184; *Falgout* v. *United States*, [5 Cir.] 279 F. 513, 515; *Cangelosi* v. *United States*, [6 Cir.] 19 F. 2d 923." *United States* v. *Vigorito*, [2 Cir.] 67 F. 2d 329, 330, certiorari denied *Vigorito* v. *United States*, 290 U. S. 705, 54 S. Ct. 373, 78 L. Ed. 606.

In one of the earliest cases in the Utah reports, this court is reported as having stated:

"In no criminal case is the burden of proof ever shifted from the prosecution to the defense.  It rests upon the prosecution throughout the entire trial, and the rule of a reasonable doubt applies in every such case." *People* v. *Tracy*, 1 Utah 343.

In the case of *State* v. *Waid, supra,* this court found it reversible error and the basis for the granting of a new trial when the trial court charged the jury that "if it 'found from a preponderance of the evidence that the offense charged was committed under substantially the considerations detailed by the witnesses of the State,' " they should find the accused guilty.

There is a divergence of view on the question of the burden imposed on a defendant interposing the defense of alibi. See 22 Corpus Juris Secundum, Criminal Law, § 574, p. 887. We think the better reasoning is found in the rule adopted by this court.

The facts show there was bound to be uncertainty in the officer's identification.  There was a change in the matter of identification of the automobile to harmonize with later information.  This reduces the identification largely to a matter of opinion.  Then it is strange that the automobile

license number plate should not have been noted—one of the best means of tracing identification. The time elapsed between the alleged offense and identification was from November 30th to March 17th.

In the instant case, the statements made by the court were matters of law upon which, if given to a jury, the court would base its reversal and order a new trial, as such instruction would have been erroneous.

The case is reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion.

LARSON, McDONOUGH, and PRATT, JJ., concur.

WOLFE, Justice (concurring in results).

I concur in the results, but only because it is somewhat difficult to determine what was in the mind of the trial judge at the time he found the defendant guilty, and under such circumstances in a criminal case it is better to grant the defendant a new trial than to speculate on what the lower court might have meant. However, there is a basis, not considered by the prevailing opinion, upon which the trial court's remarks at the time of rendering his verdict might be construed so as to reveal that he did not base his decision upon an application of the law erroneously conceived. Assuming, without deciding, that reasons given by a trial court in its decision of a criminal case come within the category of instructions to a jury in so far as determining whether the case was considered on a correct theory of the law, it is nevertheless difficult to see how the court could have had any other idea than that there continued throughout with the State the task of persuading the jury that the defendant was guilty beyond any doubt within reason—his remarks on the subject of alibi made at the time of rendering the verdict notwithstanding.

An alibi is nothing more than an element of defense. In all instances where the State's case may, to the jury's mind, be proved beyond a reasonable doubt, the defendant must introduce sufficient evidence at least to raise a reasonable

doubt where none existed theretofore. Otherwise a jury may find the defendant guilty and he may or may not raise this reasonable doubt by a defense of alibi. In this sense defendant has a burden to shake a conviction and it is in that sense which the lower court may have used the term when he delivered the reasons for his judgment. And if the defendant succeeds in raising a doubt in the mind of the jury, he should be acquitted unless the State is able to overcome that doubt by other evidence as to defendant's guilt sufficient to rebut the defense evidence. However, the State does not have to disprove an alibi any more than the defendant has to prove it.

Whether this task of establishing a defense or infusing a doubt or overcoming what might be otherwise convincing proof is called "the burden of proof," "the burden of going forward," " the burden of establishing," or merely "the responsibility of defending" makes no difference. In any instance the defendant must, if he wishes to overcome the state's case (unless that case is so weak it does not require defense evidence), introduce some evidence to that effect. And that is what the lower court could have meant when he used the somewhat inapt language, "the burden is on the defendant to establish that alibi by competent evidence, and not on the State."

In its memorandum decision on motion for new trial, the court summarized the case thus:

"So at the time plaintiff rested its case, and considering the State's case with the bare denial of the defendant, as recited above, he Court was of the opinion that the positive identification of the defendant by Oviatt, coupled with the circumstance consistent with the other facts; and consistent with defendant's guilt, and inconsistent with his innocence, *established the State's case beyond a reasonable doubt.*

"The defendant relied upon an alibi.

*"The Court cannot say that the defendant has by that alibi offered sufficient proof to establish a reasonable doubt that he was not at Farmington at the time of the burglary, as against the other testimony in the case, established by direct and circumstantial evidence in the case."*

Certainly if the State has proved the defendant's guilt beyond a reasonable doubt, and the defendant does not offer sufficient evidence thereafter to create some doubt, he should be found guilty.

If the above memorandum decision be taken into account in determining what the court meant when he stated to counsel that "if the State had to carry the burden of proof as against this alibi, and to show that the alibi was not true, I am in doubt if the evidence would be sufficient," a very much stronger case is made out for upholding the verdict. The defendant's proof in support of his asserted alibi did not require the State to prove it *untrue* or fail as a matter of law in its task of persuasion, since it may, regardless of the asserted alibi, have proved its case beyond a reasonable doubt. The judge may have concluded that there was, up to the point where the identification evidence was complete, a sufficient case made out to convict, and as a jury he thought that up to that point the defendant had been proved guilty beyond a reasonable doubt. He then takes the alibi evidence into account. He concludes that unless it is the duty of the state to introduce evidence that the alibi is not true the state has, as far as his fact-finding qualities are concerned, still carried its burden of duty to persuade. In other words, the judge in determining the fact, did not think the alibi evidence was sufficient to overcome in his mind the tentative conclusion that Whitely was the one the sheriff saw the night of the crime. Only in this sense did he mean that the defendant had not sustained his "burden of proof."

Stated in another way, the lower court could hardly have meant that if there was some evidence of identification and the defendant desired to contradict that evidence by affirmative evidence that he was elsewhere the court would take the position that, regardless of how weak the state's identification was, the defendant would have to establish such fact, either beyond a reasonable doubt or even to the satisfaction of the jury. Certainly the jury might, in a criminal case, disbelieve the alibi but still conclude that the state's identi-

fication was so weak that it had not fulfilled its duty of persuasion. To hold otherwise would mean that if the defendant once gave an alibi he would have to alibi himself out of even the weakest case the state might put up; that the duty would be on the defendant if he once tendered an alibi to convince the jury that it was true or he would be convicted regardless of the weakness of the state's case. Must we conclude that the learned trial judge had the latter view in mind? Might he not have meant that when the identification evidence and the alibi evidence were both in the State could rest without disproving the alibi by cross-examination or rebuttal evidence; and that if the defendant had not carried the burden of overcoming evidence which he thought was sufficient to convict the defendant would fail? The judge acting as jury may have concluded that defendant in this case had not overturned evidence which independent of the alibi was sufficient to convince him, the judge, that defendant was guilty—all reasonable doubts considered.

That simply expresses the process which goes on in every criminal case where the State introduces evidence which is convincing until the defendant introduces evidence which overcomes the convincingness of the State's evidence.

However, inasmuch as the correct statement of the law was made by the trial judge on motion for new trial at which time he may have been endeavoring to correct his statements made at the time he made his finding rather than endeavoring to explain what he meant theretofore, I agree that it is better that defendant be accorded a new trial.