390 P.2d 904

**STATE of Arizona, Appellee,**

**v.**

**Randolph MICHAELS, Appellant.**

No. 1344.

Supreme Court of Arizona.

In Division.

April 1, 1964.

Vincent D. Maggiore, Edmond J. Brash and Patrick E. Eldridge, Phoenix, for appellant.

Robert W. Pickrell, Atty. Gen., Stirley Newell, Asst. Atty. Gen., for appellee.

JENNINGS, Justice.

Randolph Michaels was tried and convicted by a jury of the crime of robbery. On this appeal his main contention is that the trial court erred in failing to direct his acquittal *sua sponte* at the close of the state's

case, on the ground that there was insufficient corroboration of the accomplices' testimony.

Norman Missler and Dale Michaels, appellant's brother (hereinafter referred to as Dale) were the accomplices. Their testimony disclosed the following facts: On March 22, 1962, they, along with appellant, robbed the 7–11 Market located at 16th Street and Bethany Home Road, Phoenix, Arizona. On that day appellant had gone to Missler's home about 1 p. m. Shortly thereafter, he and the two accomplices went to his home where they played cards for approximately one hour. While playing, they discussed robbing a cleaning establishment. Immediately thereafter, they went to the cleaners but, upon arriving, found too many people around so they decided to rob the 7–11 Market instead. Missler drove his turquoise Chevrolet El Camino to the scene of the crime. Appellant and Dale were sitting on the outside and in the middle of the front seat respectively.

When they arrived, Missler remained in the car and turned it around facing toward 16th Street. The other two got out and went into the Market. Dale testified that he believed appellant preceded him into the Market. While inside, Dale did not converse with the attendant, and the only thing Dale heard appellant say was "open up the register."

Both accomplices testified that they heard a shot fired. Prior to hearing the shot, Dale had noticed appellant holding a gun on the attendant. Appellant owned a 32-automatic. Missler testified that he did not see a gun in appellant's possession at any time either going to, during, or coming from the robbery, but that he only noticed the gun at appellant's home both before going to the scene and after they had returned therefrom. Missler, nevertheless, knew appellant had a gun with him at the time he got out of the car to enter the Market.[1] After the robbery, all three went to appellant's home where they divided the money.

Appellant, at the time of the robbery, was wearing a tan trench coat, pair of sunglasses, and an army hat. Missler testified that appellant was also wearing a black mask but he was not sure about the color. Dale testified that it was a white mask, but neither was he sure. Dale was wearing a black suede jacket and black mask.

1. "Q When you [Missler] pulled into the parking lot, as you testified, at this 7–11 store, did either or both of the other occupants of the car immediately get out of that car?

"A Yes, both of them did.

"Q At that time, did either one of them have in his—did you see either one of them have in his possession a gun?

"A When he first stepped out of the car, at that moment I didn't notice the gun, but I knew he had a gun with him.

"Q When did you first see the gun?

"A That day, that afternoon, when we went to his house."

A.R.S. § 13–136 provides that:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

This statute was construed in State v. Sheldon, 91 Ariz. 73, 369 P.2d 917, and from that case we take the following quotation:

"The statute's * * * primary requirement is that there be some evidence in the case which is legally sufficient to *lend credibility* to the statements of the accomplice. It must be evidence which will afford the trier of fact a sufficient basis for *believing* the testimony of the accomplice. But it need not corroborate any particular part of the accomplice's testimony. (citing cases) Nor need the 'corroboration * * * be by direct evidence (for) the *entire conduct of the defendant* may be looked to for corroborating circumstances and if from those circumstances, his connection with the crime may be fairly inferred, the corroboration is sufficient.' (citing case)" 91 Ariz. at p. 79, 369 P.2d at pp. 921–22. (Emphasis ours.)

See also State v. Forsythe, 94 Ariz. 78, 381 P.2d 762. The statutory requirement is that such other evidence must only "tends to connect the defendant with the commission of the offense." It does not require that such corroborative evidence must directly connect the defendant with the offense. State v. Sheldon, supra. The primary purpose of our corroboration statute is to lend credence to the testimony of the accomplice rather than to show the accused's direct participation in the crime. Ibid.

The following facts were brought out by witnesses other than the accomplices. Leslie Barr testified that about 2 p. m., give or take a half hour, on the day of the robbery, he and his brother were proceeding north on 16th Street just above Bethany Home Road when they noticed a turquoise Chevrolet El Camino pull up to the 7–11 Market. They saw two occupants get out, one of whom was carrying an automatic. The one carrying the gun was wearing a light brown coat a little longer than waist length and was also wearing a white handkerchief over his face. The second person was wearing a black coat, and as he was coming around the front of the car, he started to tie a black handkerchief over his face. Barr further testified that one of them was wearing a hat but did not recall which one. The two went inside while another stayed in the car.

Barr and his brother proceeded up the road a couple of hundred feet and turned

around to come back and observe what happened. They noticed that the car had been turned around facing 16th Street. They took the license number and an officer later traced it to Missler. As the car left the scene, one of the occupants, not the driver, was wearing a pair of sunglasses.

The attendant, Don Campbell, testified that at approximately 2:30 p. m. he was working at the market when he looked up and saw a man entering the store wearing a white mask over his face, sunglasses and carrying an automatic. Campbell also saw another person behind this one. He immediately asked if this was a holdup. Not receiving any reply, he turned around and lifted his hands and asked if there was anything they wanted him to do. The first time that either one spoke was when one of them said "all right, turn around and open up the cash register." Later Campbell heard another statement, "turn around and back over here to me." Campbell testified that he could not say for sure which man was doing the talking in these two instances. The next thing he knew he was on the floor.

■ On March 26th, 1962, Campbell viewed a lineup at the Phoenix City Police Department. When he looked at the five men, he told the officers that two of them had similar hair but since all he could see of the person who came into the store with the gun was his forehead and hair, it was impossible for him to identify by viewing them in that manner. The officers then had the men in the lineup come up to the viewing window with cards over their faces and wearing sunglasses. An officer asked Campbell if he had seen any of these individuals before and Campbell pointed to appellant. Campbell said appellant looked like the person, but he wasn't sure. He said it was impossible to tell. He believed that he was the man. It is enough that the witness believes the defendant to be the same person, and the weight and credibility of the identifying evidence is for the jury. State v. Dutton, 83 Ariz. 193, 318 P.2d 667.

Campbell said he could remember the voice, not to pinpoint the exact person, but to detect a resemblance thereof. He then went into the room where the men were and turned his back to them and each one was asked to repeat, "turn around, open up the cash register." After all five men had spoken, the officer asked Campbell which voice sounded like the man Campbell had heard speaking in the store. Campbell said the first person who spoke and this turned out to be appellant.

■ ■ Edwin Smith, a policeman, testified that on March 26th, during the interrogation of appellant, he overheard a conversation between appellant and his brother Dale, an admitted participant in the crime:

"Q  What did you hear him (appellant) say in Dale's presence?

"A  First off, he said, 'Don't tell these birds anything.  They don't know nothing.'

"Q  Anything else?

"A  And he said, 'As I recall, you were at the park, Encanto Park, playing ball.'  And I told Randolph then, I said, Oh you are the one that made up this story.  And he said, 'I am?  Prove it.'"

This evidence tended to corroborate, for the entire conduct of the defendant may be looked to for corroborating circumstances. State v. Sheldon, supra.

█  We hold that all of the above testimony and circumstances, when considered collectively, constituted a sufficient basis for believing the accomplices' testimony and the lower court properly submitted the case to the jury.

Appellant's second assignment of error is without merit.  It was prompted by an error in transcription.

Judgment affirmed.

UDALL, C. J., and LOCKWOOD, V. C. J., concur.