410 P.2d 132

**STATE of Arizona, Appellee,**

v.

**Kenneth Ray MARTIN and Ralph Edward Martin, Appellants.\***

**No. 2 CA–CR 18.**

Court of Appeals of Arizona.

Jan. 25, 1966.

---

\* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 1531. The matter was referred

to this Court pursuant to A.R.S. Section 12–120.23.

512

Darrell F. Smith, Atty. Gen., E. D. Mc-Bryde, Pinal County Atty., Lloyd D. Brumage, Chief Deputy County Atty., Pinal County, Florence, for appellee.

M. B. Moseley, Phoenix, for appellant.

KRUCKER, Chief Judge.

Kenneth Ray Martin and Ralph Edward Martin appeal from convictions, by a jury, of five counts of forgery. The facts will be presented in a manner most favorable to sustaining the verdict.

In August 1963, both defendants, with several others, visited the home of one Virgil Baker, defendants' uncle. Baker was the foreman of a farm owned by one Woodman Moore, and was authorized to write checks on the Moore account, keeping the checkbook at his home. Early in September 1963, Baker discovered that two pages of checks were missing and at the trial identified the checks used in the alleged forgery as those missing from the Moore checkbook.

Charlotte Johnson, the prosecution's key witness and defendants' alleged accomplice, testified that she had known the defendants for over a year prior to the date of the alleged crimes. She visited the Baker home with the defendants about July 1, 1963, and thereafter went to California. On August 19, 1963, she received a telephone call from Kenneth Martin, who instructed her to return immediately to Phoenix. She arrived in Phoenix later that evening and went to the Martin apartment. Ralph Martin showed her sheets of Woodman Moore checks and, when both defendants were present, Charlotte was told of the plan to travel to Coolidge, Arizona, and attempt to pass the checks.

Charlotte Johnson further testified that about 3:00 p. m. on August 20, 1963, she and the defendants drove to Coolidge in Kenneth's 1959 Mercury and surveyed the town for possible places to cash checks. The plan was conceived that Charlotte would write out the checks in the fictitious name of John Thomas and sign Woodman Moore's name. One of the defendants would then endorse the payee's name on the back of the

check, Charlotte would attempt to cash the checks, posing as Jean Thomas, the payee's wife, and endorse that name on the back of the checks.

Five checks were passed, the first at the Coolidge Market, where Charlotte cashed the check alone. The owner of this market testified that later the same day both defendants came in the store and attempted to cash a Woodman Moore check. The next check was cashed at Lee's Foodland Market and no evidence was offered to show that the defendants entered this store. Charlotte cashed the third check at the Safeway Store in Coolidge and the cashier testified that Kenneth Martin was present in the store when she cashed this check. The fourth check was cashed by Charlotte at George Y. Wah's Market. An employee of this market testified that about one hour later Kenneth unsuccessfully attempted to cash a similar check. The fifth check was cashed at the Galloping Goose Bar and a bartender testified that both defendants were present about the same time Charlotte cashed the check. Several other attempts to cash checks were made and a bartender for the La Palma Bar testified that the three were present in that bar and left together in a 1959 Mercury, later identified as Kenneth's. Charlotte further testified that the trio returned to Phoenix, divided the funds, and that she left for California early the following morning. She also testified that about one month prior to the date the checks were passed, Kenneth assisted her in obtaining an affidavit of identity with which a temporary driver's license was issued to her in the name of Jean Thomas.

On September 12, 1963, Charlotte Johnson was arrested and gave a written statement concerning the entire episode, thereby implicating the defendants. She entered a plea of guilty and a four-year suspended sentence was imposed. The defendants thereafter were arrested and a preliminary hearing held as to Kenneth Martin, Ralph Martin having waived preliminary hearing. Kenneth was informed against on five counts of forgery and Ralph on four counts

of forgery, to which not guilty pleas were entered. The cases were later consolidated and the information, as to both defendants, amended changing the date of the commission of the alleged crimes to "on or about August 20, 1963" from the original information which charged commission of the crimes "on or about August 15, 1963". The trial was continued to allow the defendants time to prepare defenses in accordance with the amendment to the information.

Defendants appeal their conviction and ask for a new trial, asserting eight assignments of error allegedly committed by the trial court.

The first two assignments of error will be considered together since both concern the propriety of the trial court's action in allowing the prosecution to amend the information changing the date of the alleged crimes. Defendants contend that the trial court erred in denying their motion to quash the amendment to the information.

The fact that the State erroneously provided in its initial information that the alleged crimes were committed "on or about August 15, 1963" rather than "on or about August 20, 1963" does not appear significant. Rule 118, Arizona Rules of Criminal Procedure, 17 A.R.S., provides that an indictment or information need not contain an allegation of the time of the commission of an offense unless such allegation is necessary to charge the offense. In the amendment to the information, both appellants were charged with five counts of forgery in violation of A.R.S. § 13–421. By a careful reading of this statute, nowhere does it appear that time is an essential element of the crime of forgery. Three elements are, however, essential to constitute the offense of forgery, 23 Am.Jur. Forgery § 6 (1940):

> "(1) There must be a false writing or alteration of an instrument;
>
> (2) The instrument as made must be apparently capable of defrauding; and
>
> (3) There must be an intent to defraud."

Further, "The crime of forgery is complete when one either makes or passes a false instrument with intent to defraud." State v. Maxwell, 95 Ariz. 396, 399, 391 P.2d 560, 562 (1964). Since time is not an essential element of the crime of forgery, an allegation in the information that the crime was committed "on or about" appears sufficient. Rule 118, Arizona Rules of Criminal Procedure.

This Court has reviewed the case of State v. Rogers, 2 Ariz.App. 232, 407 P.2d 773, 776 (1965), which held:

> " * * * that where an amended information is filed as distinguished from an amendment to an information * * * the defendant must be rearraigned on the amended information."

That case, however, involved a plea of guilty to the original information, which was defective, and the filing of an amended information correcting its deficiencies. The defendant attempted to withdraw his plea of guilty and the trial court ruled that the plea stood as to the amended information. On appeal, the Court of Appeals, Division One, held that this constituted reversible error.

■■■ This Court construes an "amendment to an information" to mean a supplement to an otherwise effective and sufficient information, whereas "an amended information" constitutes the filing of a new instrument which supersedes its predecessor. Thus, the case at bar can be distinguished from State v. Rogers, supra, since the information in the case before this Court was sufficient to charge the commission of the crimes of forgery, and the amendment to the information merely consolidated the charges against the defendants, both being charged with five counts of forgery, and changed the date of the commission of the alleged crimes. This constitutes an "amendment" to the original information and not the filing of an "amended information."

■ Assignment of error number three only concerns the defendant Ralph Martin. The facts show that Ralph Martin was charged with four counts of forgery and, after waiving a preliminary hearing, was arraigned on these four counts to which he entered a plea of not guilty. Upon consolidation of these cases and the filing of the amendment to the information, both defendants were charged with five counts of forgery. The prosecution admits that Ralph Martin was inadvertently charged with an additional count of forgery, which was Count I, in the amendment to the information, to which preliminary hearing was not waived. This Court agrees that the record shows such variance and it is, therefore, held that Count I be dismissed as to Ralph Martin.

In their assignment of error number four, defendants charge that the trial court abused its discretion in refusing to allow the admission of evidence concerning their defense of alibi. The facts show that notice of intent to claim alibi was filed on the day preceding trial. Defendants acknowledge their failure to file timely notice in accordance with Rule 192, subsec. B, Arizona Rules of Criminal Procedure, which requires the filing of notice of intent to rely on alibi not less than five days prior to the trial, and heavily rely on the last sentence of this rule which reads:

> "If a defendant fails to file the required notice, the court, *in its discretion,* may exclude evidence offered for the purpose of proving such defense." (Emphasis supplied.)

The only basis urged in support of this contention is that the prosecution was not prejudiced by defendants' failure to file timely notice and no surprise or unfair advantage resulted. Thus, defendants argue, the trial court abused its discretion in refusing to admit alibi evidence. We cannot agree.

■ Since alibis are readily fabricated, they "should be received with caution, carefully scanned for the purpose of determining its truth or falsity, and weighed and determined like any other evidence." 23 C.J.S. Criminal Law § 923a (1961) at page 657. Further, statutes providing for

the defense of alibi are intended to erect safeguards against its wrongful use and give the prosecution time and information to investigate the merits of such defense. State v. Whitely, 100 Utah 14, 110 P.2d 337 (1941). In State v. Nooks et al., 123 Ohio St. 190, 174 N.E. 743 (1930), the Ohio Supreme Court noted that to conclude that the trial court abused its discretion in cases such as this would be to deprive the statutes of any force and effect whatsoever.

Alibi evidence can be a complete, legitimate and effective defense. 21 Am.Jur.2d, Criminal Law § 136 (1965); 22 C.J.S. Criminal Law § 40 (1961). It is equally established that to be an effective defense, it must be shown that the defendants were so far from the place where the crime occurred that they could not, with ordinary exertion, have reached the place of the alleged crime in time to have participated therein, and in order to be legally effective it must cover the entire time during which the crime is alleged to have been committed. Id. Singh v. State, 35 Ariz. 432, 280 P. 672, 67 A.L.R. 129 (1929).

The facts of this case show that during the defendants' case, an offer of proof was made for the purpose of showing that the defendants were in Phoenix on August 20, 1963 "up until the early evening hours." Testimony of various witnesses established the defendants' presence in Coolidge and vicinity between the hours of 3:30 p. m. and 9:30 p. m. on August 20, 1963. This Court takes cognizance of the fact that Coolidge is not so far distant from Phoenix to warrant the conclusion that the defendants could not, with ordinary exertion, have arrived at the place of the alleged crimes in time to have participated therein. After a thorough review of the record of this case, and in the absence of compliance with Rule 192, subsec. B, Arizona Rules of Criminal Procedure, this Court cannot conclude that the trial court abused its discretion in refusing to admit alibi evidence.

Defendants further assign as error the trial court's refusal to grant their requested instruction regarding the expectation of the State's prime witness that she would receive lenience or favorable treatment by cooperating with the prosecution. Defendants' requested instruction read as follows:

"You are instructed that in determining the witness's motive for testifying, his bias or prejudice, you may consider whether or not the witness believes that by testifying on behalf of the State he will receive leniency or favorable treatment by the State in connection with a crime commited by him. It does not matter whether or not the witness is mistaken, unreasonable or, indeed, is not based on any words or conduct of the prosecution. The test is the witnesses expectation or hope of a reward, not the actuality of a promise by the State."

The trial court, in refusing the above requested instruction, concluded that its substance was sufficiently included in other instructions. In addition to several instructions regarding corroboration of an accomplice's testimony, the trial court gave the following instructions:

"In determining what credit should be given to the witnesses who testified, you have the right to take into consideration their appearance, their actions, and demeanor while on the witness stand. You have the right to take into consideration any interest, any motive, any prejudice, if such be shown, * * *."

"It is the law that the testimony of an accomplice should be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with care and caution and in the light of all the evidence in the case."

In support of their contention of error, defendants strongly urge upon this Court the holding of State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A.L.R.2d 1120 (1960). We agree that this case is authority for the proposition that evidence showing that a

witness has a motive for testifying on behalf of the state or against the defendant is admissible for impeachment purposes.

In the case before us, which differs materially from State v. Little, supra, defendants' counsel was allowed great latitude in cross-examining the prosecution's prime witness. Defendants' counsel repeatedly queried this witness as to her motive for testifying on behalf of the state. Not only did he raise the issue of her suspended sentence on the forgery charges for which defendants were then being tried, but also was permitted to show that an information on another charge filed against the witness in Phoenix had also been dismissed.

■ In view of this, and the fact that the court fully instructed the jury as to corroboration of an accomplice's testimony, as well as an instruction that a witness' motive for testifying may be considered by the jury, this Court cannot conclude that further instructions would have added anything to those given. No error was committed in the refusal of defendants' offered instruction.

Defendants' sixth assignment of error concerns a comment made by the trial judge during the course of the trial in the jury's presence. The circumstances surrounding this comment must be reviewed in order to determine fully any significance to be attached thereto.

The defendants began their cross-examination of the prosecution's prime witness toward the close of the first day of trial. This cross-examination was completed the following morning and shortly after the prosecution began its re-direct examination, the trial judge made the following remark:

"I don't think we have heard anything material all morning. We are trying to prove forgery."

■ Defendants admit that timely objection was not made nor was this circumstance presented in support of their motion for a new trial. Appeal is made to this Court's concept of fundamental justice. However, in State v. Romero, 85 Ariz. 263,

336 P.2d 366 (1959), the trial judge commented, regarding a witness who was present during the trial even though the rule excluding witnesses from the courtroom had been invoked, that in view of such witness' standing, the judge doubted that he would be influenced and the witness was allowed to testify. No objection was made and our Supreme Court stated that failure to object at the appropriate time during the trial constituted a waiver of the right to assign as error the statement made by the trial judge. In Pioneer Constructors v. Symes, 77 Ariz. 107, 267 P.2d 740 (1954); 41 A.L.R. 2d 668 (1955), our Supreme Court further stated that if the question is not raised below it cannot be raised on appeal. And in 23 C.J.S. Criminal Law § 987a at page 1003, and § 998 (1961), the following elucidating remark is found:

"* * * [O]bjections to improper remarks or conduct of the judge during the trial, such as in commenting on the evidence or in examining witnesses, must be made at the earliest opportunity or they will be considered waived, unless such conduct or remarks are so prejudicial that their effect is considered ineradicable."

Defendants fail to show that they were prejudiced by the trial judge's comment and only contend that this remark obviously referred to their cross-examination and indicated to the jury that the court was not impressed with any evidence brought out by the defense. We cannot agree with this contention since, at face value, the remark appears to be a rebuke aimed at the prosecution for its failure to produce material evidence showing forgery. And further, error in a criminal case is not presumed to be prejudicial. Art. 6, § 27, Arizona State Constitution, A.R.S.; State v. Martinez, 67 Ariz. 389, 198 P.2d 115 (1948); Lawrence v. State, 29 Ariz. 247, 240 P. 863 (1925).

Defendants' seventh assignment of error contends that the trial court erred in failing to direct verdicts for the defendants since insufficient corroborative evidence to sup-

port the accomplice's testimony was adduced during the trial.

A.R.S. § 13–136, requires corroboration of an accomplice's testimony in order to sustain a conviction.[1] This statute was thoroughly reviewed in State v. Sheldon, 91 Ariz. 73, 369 P.2d 917 (1962), in which Vice Chief Justice Udall discusses the history of the law leading to the enactment of this statute. The words of this statute "tends to connect" were analyzed, at page 79, 369 P.2d page 921, as follows:

"The statute's (Section 13–136) primary requirement is that there be some evidence in the case which is legally sufficient to lend credibility to the statements of the accomplice. It must be evidence which will afford the trier of fact a sufficient basis for believing the testimony of the accomplice. But it need not corroborate any particular part of the accomplice's testimony. (Citing cases.) Nor need the 'corroboration * * * be by direct evidence [for] the entire conduct of the defendant may be looked to for corroborating circumstances and if from those circumstances, his connection with the crime may be fairly inferred, the corroboration is sufficient.'" (Citing case.)

This case is noted in the subsequent cases of State v. Michaels, 95 Ariz. 374, 390 P.2d 904 (1964); and State v. Forsythe, 94 Ariz. 78, 381 P.2d 762 (1963). Also see State v. Bagby, 83 Ariz. 83, 316 P.2d 941 (1957); State v. Miller, 71 Ariz. 140, 224 P.2d 205 (1950); State v. Cassady, 67 Ariz. 48, 190 P.2d 501 (1948); Duarte v. State, 48 Ariz. 356, 61 P.2d 1015 (1936); Turley v. State, 48 Ariz. 61, 59 P.2d 312 (1936).

We have laboriously reviewed the record in this case and the testimony of each corroborating witness and find that substantial evidence was presented tending to show that both defendants visited their uncle's farm prior to the commission of these crimes, that both had access to the Woodman Moore checkbook during this visit, that both defendants were identified as being with the accomplice in Coolidge during the hours and on the date the crimes occurred, that both defendants were seen with the accomplice in several of the establishments visited where checks were either passed or attempted to be passed, that both defendants were present in at least one establishment when Kenneth Ray Martin attempted to pass a forged check, and that neither defendant had ever been given authority to draw checks on the Woodman Moore account. We are compelled to conclude that, taken together, the corroborating evidence indicates the joint planning and execution of a common scheme to defraud. In view of the foregoing, we hold that as to Kenneth Ray Martin there was sufficient corroborative evidence to submit Counts I through V to the jury, and as to Ralph Edward Martin, sufficient corroborative evidence to submit Counts II through V to the jury.

We find no merit in defendants' eighth assignment of error concerning misconduct of the jury. The matter was fully investigated during hearings on defendants' motion for a new trial and we find no abuse

1. An enlightening analysis of corroborative testimony and the reasoning which lies behind the rule is found in VII Wigmore, Evidence (3d ed., 1940), § 2059, which states in part at page 327:
"We are assuming that the accomplice is not to be trusted in the case in hand; his credit is an entire thing, not a separable one; therefore, whatever restores our trust in him personally restores it as a whole; * * * whenever, then, by any means, that trust is restored, our object is accomplished, * * *. The important thing is, not how our trust is restored, but whether it is restored at all."
Wigmore presents several requirements for corroboration in which he notes, VII Wigmore, Id., page 334:
"Under the statutory rule, the sufficiency of the evidence as satisfying the definition of the rule of law is of course for the judge, while its effect as actually making the accomplice's testimony truthworthy is for the jury."

of the trial court's discretion in denying such motion.

■ Both appellants were sentenced to a term of not less than 5 nor more than 7 years on Count I, a term of not less than 2 nor more than 3 years on Count II, said sentences to run consecutively. In addition, both defendants were sentenced to terms of not less than 2 years nor more than 3 years on Counts III, IV and V, to run concurrently with the sentence on Count II.

This Court reverses the conviction as to Ralph Edward Martin on Count I and affirms the conviction as to Counts II, III, IV and V. It is therefore ordered as to Ralph Edward Martin that he be remanded to the trial court for resentencing on Counts II, III, IV and V, the conviction on said counts being affirmed. As to Kenneth Ray Martin the judgment is affirmed on all five counts.

HATHAWAY and MOLLOY, JJ., concurring.