[Criminal No. 592.   Filed February 2, 1925.]

[232 Pac. 887.]

## VIOLA C. KINGSBURY, Appellant, v. STATE, Respondent.

1. GRAND JURY—GRAND JURORS MAY BE SUMMONED FORTHWITH WITHOUT NOTICE.—Civil Code of 1913, paragraphs 3530, 3531, do not prescribe sole method of calling grand jurors, but under paragraph 3542, they may be summoned forthwith without previous notice.

2. CRIMINAL LAW—PRESUMED ROLL-CALL OF GRAND JURY DULY HAD IN ABSENCE OF CONTRARY SHOWING.—It is presumed that officers do their duty and that roll-call of grand jury was duly had in absence of contrary showing.

3. BANKS AND BANKING—INDICTMENT CHARGING WILLFUL MISAPPLICATION OF BANK'S FUNDS BY ASSISTANT CASHIER AND AGENT HELD SUFFICIENT.—Indictment charging willful misapplication of bank's funds by assistant cashier and agent of bank was sufficient, under

3. See 3 R. C. L. 512.

27 Ariz.—19

Session Laws of 1922, chapter 30, section 1, without alleging accused held fiduciary position in bank.

4. COURTS—DECISIONS OF FEDERAL COURTS NOT BINDING ON STATE COURTS IN CONSTRUING STATE STATUTES.—Decisions of federal courts are not binding on state courts in construction of state statutes.

5. BANKS AND BANKING—LOAN PROHIBITED BY LAW HELD IPSO FACTO MISAPPLICATION OF BANK'S FUNDS—"MISAPPLY."—Bank loan prohibited by law is *ipso facto* misapplication of bank's funds, within Session Laws of 1922, chapter 30, section 1, "misapply" meaning to apply wrongly, to use for wrong purpose.

6. BANKS AND BANKING—INDICTMENT ALLEGING WILLFUL MISAPPLICATION OF BANK'S FUNDS IN MAKING ILLEGAL LOAN HELD SUFFICIENT.—Indictment alleging that borrower was indebted to bank for amount in excess of twenty-five per cent of bank's capital stock and surplus, when additional loan to borrower was made with intent to defraud bank, *held* sufficiently to charge willful misapplication of bank's funds, within Session Laws of 1922, chapter 30, section 1, without alleging actual conversion or loss of funds.

7. BANKS AND BANKING—SCOPE OF EVIDENCE MUST BE WIDE WHERE INTENT AND CONSPIRACY TO DEFRAUD DISPUTED ELEMENTS OF OFFENSE.—Where disputed elements of offense of misapplying funds of bank by illegal loan are intent and conspiracy to defraud, scope of evidence must be wide, and state may show entire history of transaction and circumstances showing accused's knowledge thereof.

8. CRIMINAL LAW—ACTS AND STATEMENTS OF EACH CONSPIRATOR IN FURTHERANCE OF CONSPIRACY ADMISSIBLE AGAINST OTHERS.—Acts and statements of each conspirator made in furtherance of conspiracy are admissible against each of others.

9. CRIMINAL LAW—RULE AS TO NATURE OF ACCOMPLICE'S TESTIMONY REQUIRED TO AUTHORIZE CONVICTION STATED.—Under Penal Code of 1913, section 1051, corroboration required to authorize conviction on testimony of accomplice may be circumstantial and no particular testimony of accomplice need be corroborated.

10. CRIMINAL LAW—TO BE ACCOMPLICE IN WILLFUL MISAPPLICATION OF BANK'S FUNDS, ALLEGED ACCOMPLICE MUST HAVE KNOWLEDGE OF INTENT OF ACTUAL PERPETRATORS OF CRIME.—To be accomplice in willful misapplication of bank's funds within Session Laws of 1922, chapter 30, section 1, in which intent to defraud is essential ingredient, alleged accomplice must have knowledge of intent in minds of actual perpetrators of crime.

11. CONSPIRACY — NO PRESUMPTION THAT ALLEGED ACCOMPLICE HAD KNOWLEDGE OF INTENT OF ACTUAL PERPETRATORS OF CRIME.—There

---

5. See 3 R. C. L. 509.   7. See 3 R. C. L. 515.   8. See 1 R. C. L. 518.   9. See 1 R. C. L. 171.   10.   See 1 R. C. L. 158.

is no presumption that alleged accomplice had knowledge of intent in minds of actual perpetrators of crime.

12. CRIMINAL LAW—INSTRUCTIONS MUST BE CONSTRUED AS WHOLE.— In passing on question whether instructions were erroneous, instructions must be construed as whole.

13. CRIMINAL LAW—DUTY OF COURT TO INSTRUCT AS TO FACTS TO BE FOUND, BUT NO PARTICULAR FORM OF INSTRUCTIONS REQUIRED.—It is duty of court to instruct jury as to facts essential to be found for conviction, but such instructions need not be given in any particular form so long as they clearly apprise jury of ultimate facts to be found.

14. CRIMINAL LAW—ACCUSED CANNOT OBJECT TO INSTRUCTION ERRING IN HER FAVOR.—Accused cannot object that instructions given erred in placing greater burden on state in proving accused's guilt than law required.

See (1) 28 C. J., p. 779.  (2) 16 C. J., pp. 539, 540.  (3) 7 C. J., p. 579 (1926 Anno.).  (4) 15 C. J., p. 929.  (5) 7 C. J., p. 579 (1926 Anno.); 27 Cyc., p. 796.  (6) 7 C. J., p. 579 (1926 Anno.).  (7) 7 C. J., p. 579 (1926 Anno.).  (8) 16 C. J., p. 644.  (9) 16 C. J., p. 705.  (10) 16 C. J., pp. 129, 672.  (11) 12 C. J., p. 632 (1926 Anno.).  (12) 16 C. J., p. 1049.  (13) 16 C. J., pp. 962, 1031.  (14) 17 C. J., p. 360.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Rehearing granted: For opinion on rehearing, see 28 Ariz. p. ——, 235 Pac. 140.

Mr. G. P. Bullard, Mr. Samuel White and Mr. Charles A. Carson, Jr., for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

LOCKWOOD, J.—Defendant in this case was indicted by the grand jury of Maricopa county, together with W. J. Kingsbury, Thornton Jones, Jr., and W. W. Kingsbury, for the crime of willful

misapplication of the funds of the Farmers & Merchants' Bank of Tempe, Arizona. She duly filed in the superior court of Maricopa · county a motion to quash and set aside the indictment, which motion was by the court overruled, as was also a demurrer, whereupon defendant entered a plea of not guilty. Thereafter, the court, on defendant's motion, permitted her to withdraw her plea of not guilty, for the purpose of filing further motions and demurrers. Thereupon she filed a motion to quash and set aside the indictment, which motion was by the court denied, after a hearing and the introduction of evidence both oral and documentary. Upon this hearing it developed that the superior court of Maricopa county ordered a grand jury drawn forthwith, upon the fourth day of August, 1923, to be in attendance upon the sixth day of August. Said drawing was regularly conducted in accordance with law in all respects, but no previous notice of the same was given by posting or publication or otherwise. Six additional grand jurors were drawn on the sixth day of August forthwith, to report on the ninth day of August. This additional drawing was regularly conducted in all respects according to law but no notice of the drawing was given by publication, posting or otherwise. On the ninth day of August, seventeen persons of those so drawn were sworn in as the grand jury of the county, but the minutes of the clerk of the court do not disclose that a roll-call of the grand jury was ever had. Said grand jury returned their indictment into court on the eighteenth day of August, 1923, and it is upon this indictment that defendant was tried.

The matter came on for hearing before a trial jury on the nineteenth day of October, 1923, and defendant demanded a severance, which was duly

allowed. The case was tried over a considerable period of time and, on the 26th of October, the jury returned a verdict of guilty. The usual motions were duly made in arrest of judgment and for a new trial, which were by the court overruled, and defendant appealed from the order denying the new trial and from the final judgment.

There are some forty-nine assignments of error presented for the consideration of the court, some of which need but little consideration, but others present questions of serious import, demanding careful attention. We shall take them up *seriatim*, giving them such discussion as seems necessary, and stating our conclusions thereon.

The first assignment attacks the validity of the grand jury which returned the indictment. It is the theory of defendant that grand juries in Arizona must be drawn solely under the provisions of paragraphs 3530 and 3531, Revised Statutes of Arizona (Civ. Code 1913). The court evidently took the view that under our law there are two methods of drawing juries; first, that set forth in the paragraphs above referred to, and the second that provided for in paragraph 3542, Revised Statutes of Arizona (Civ. Code 1913), which reads, in so far as it is material, as follows:

"Where jurors are not drawn and summoned in the manner hereinbefore prescribed to attend any superior court, or a sufficient number of jurors fail to appear, such court may in its discretion order a sufficient number to be drawn forthwith and summoned to attend such court. . . . "

The paragraph was amended in 1917 (Laws 1917, c. 24, § 3) and again in 1919 (Laws 1919, c. 114, § 1), but the effect of the amendments was merely to eliminate what was known as the open venire and they do not substantially change the part above

quoted. The manner of securing of a grand jury was discussed by our Supreme Court in *Territory* v. *Chartz*, 4 Ariz. 4, 32 Pac. 166. And while that case referred to the open venire, the reasoning therein applies equally well to the drawing of a jury forthwith.

It is presumed that officers do their duty, and for this reason we must assume that the roll-call of the jury was duly had, in the absence of a showing to the contrary. We are satisfied that the first assignment of error is not well taken,. and that the grand jury which returned the indictment was properly called.

The second assignment of error attacks the indictment, and numerous flaws are alleged to exist therein. They may, however, be substantially reduced to one, viz., that the facts stated do not constitute a public offense. The indictment in this case is brought under section 1, chapter 30, Session Laws of Arizona of 1922, which reads as follows:

"Every president, director, cashier, teller, clerk, or agent of, or any receiver appointed for, any savings bank, banking corporation, or trust company organized under the laws of the state of Arizona, or under the laws of any other state or country doing business in the state of Arizona, who willfully misapplies any of the moneys, funds, or credits of any savings bank, banking corporation, or trust company; or who, without authority of the board of directors, or in the case of a receiver without authority of the proper court, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree of such savings bank, banking corporation, or trust company; or who makes any false entry in any book, report, or statement of such savings bank, banking corporation, or trust company, with intent in either case to injure or defraud such savings bank, banking corporation, or trust com-

pany, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such savings bank, banking corporation, or trust company or any agent lawfully appointed to examine into the affairs of such savings bank, banking corporation, or trust company; and every person who with like intent aids or abets any officer, clerk or agent in any violation of this section shall be guilty of a felony.''

This statute was apparently taken from the Revised Statutes of the United States, section 5209 (6 Fed. Stats. Ann., p. 770; U. S. Comp. Stats., § 9772), which is as follows:

''Every president, director, cashier, teller, clerk, or agent of any association, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the association; or who, without authority from the directors, issues or puts in circulation any of the notes of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree; or who makes any false entry in any book, report, or statement of the association with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten.''

The portion of the indictment which it is necessary for us to consider in passing upon this assignment of error reads thus:

''That on the 31st day of March, A. D. 1923, the amount of the paid-in capital stock of said Farmers' & Merchants' Bank, and surplus earned

and set aside as a surplus fund by said Farmers' & Merchants' Bank, was the sum of $50,000; that on the 31st day of March, A. D. 1923, the Arizona Cattle Company was a corporation organized and established under the laws of the territory (now state) of Arizona and existing under the laws of the state of Arizona; that on said 31st day of March, A. D. 1923, the said Arizona Cattle Company, a corporation, as aforesaid, was indebted to the said Farmers' & Merchants' Bank, a corporation, as aforesaid, in the sum of $35,900, which said indebtedness on said 31st day of March, A. D. 1923, exceeded 25 per cent. of the said paid-in capital stock of said Farmers' & Merchants' Bank and surplus earned and set aside as a surplus fund by said Farmers' & Merchants' Bank; that by reason of all the aforesaid the said Farmers' & Merchants' Bank, a corporation, was not on the 31st day of March, A. D. 1923, legally permitted to loan to the said Arizona Cattle Company, any additional moneys belonging to said Farmers' & Merchants' Bank, a corporation, to said Arizona Cattle Company; that on or about the said 31st day of March, A. D. 1923, the said W. J. Kingsbury, president as aforesaid, Viola C. Kingsbury, assistant cashier and agent, as aforesaid, Thornton Jones, Jr., cashier, as aforesaid, and the said W. W. Kingsbury, teller, clerk and agent, as aforesaid, at the county of Maricopa, in the state of Arizona, did then and there, with the intent, on the part of the said W. J. Kingsbury, Viola C. Kingsbury, Thornton Jones, Jr., and W. W. Kingsbury, to injure and defraud the said Farmers' & Merchants' Bank, a corporation, and the stockholders thereof, willfully, unlawfully and feloniously transfer and credit and cause to be transferred and credited to the personal and private credit, use, benefit and gain of the said Arizona Cattle Company, a corporation, out of the proper moneys, funds and credits of the said Farmers' & Merchants' Bank, a large sum of money, to wit, $12,000, of the value of $12,000, lawful money of the United States of America, in this, to wit, that the said Arizona Cattle Company did not pay for said transfer and credit any sum of money whatever or anything of

value and did not give to the said Farmers' & Merchants' Bank as the said defendants, and each of them, then and there well knew, any security therefor, or any other proper evidence of indebtedness therefor, said transfer and credit being so made and given for purported loans to one Ray B. Jones, the defendants having theretofore, to wit, on or about the 30th day of March, A. D. 1923, for said purported loans to the said Ray B. Jones, directed and caused the said Ray B. Jones to execute and deliver to the said Farmers' & Merchants' Bank his two certain promissory notes in favor of said Farmers' & Merchants' Bank, each dated March 30, 1923, each being for the principal sum of $6,000, and each signed by the said Ray B. Jones, without the said Ray B. Jones receiving from the said Farmers' & Merchants' Bank any consideration or thing of value for either of said notes, and he, the said Ray B. Jones, not then and there directing the defendants aforesaid, or either of them, to transfer or credit said sum of $12,000 to the personal or private credit, use, benefit or gain of the said Arizona Cattle Company, a corporation—contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dignity of the state of Arizona.''

It is contended by defendant that the indictment is not valid in that it fails to ·include four averments: First, that defendant held a fiduciary position in the bank conferring authority upon her to loan or transfer the bank's moneys as alleged in the indictment; second, that the notes of Ray B. Jones referred to therein were due or unpaid; third, that the notes were worthless or noncollectable, or that Jones, the maker, was insolvent; fourth, that the bank had sustained any loss by reason of the transaction set out in the indictment.

This court has never passed upon a case arising under this section of our statutes, but the federal statute has been repeatedly construed in the federal

courts. It is, of course, necessary that the indictment state all the material elements of the crime. The federal courts are practically unanimous in holding that it is absolutely essential to show, in a case under section 5209, that there was an intent to defraud the bank, that the funds were applied unlawfully and that the transaction resulted in a loss to the bank. *Dow* v. *United States,* 82 Fed. 904, 27 C. C. A. 140; *Mohrenstecher* v. *Westervelt,* 87 Fed. 157, 30 C. C. A. 584; *United States* v. *Northway,* 120 U. S. 327, 30 L. Ed. 664, 7 Sup. Ct. Rep. 327; *United States* v. *Britton,* 107 U. S. 655, 27 L. Ed. 520, 2 Sup. Ct. Rep. 512; *Batchelder* v. *United States,* 156 U. S. 426, 39 L. Ed. 478, 15 Sup. Ct. Rep. 446 (see, also, Rose's U. S. Notes).

It has been expressly ruled that to complete misapplication of the funds of a bank it is necessary that the funds should be withdrawn from the possession or control of the bank, or a conversion thereof in some form should occur so that the bank loses the sum. *Dow* v. *United States, supra.*

So far as the first point made against the indictment is concerned, it is alleged that Viola C. Kingsbury was the assistant cashier and agent of the bank. The statute specifically covers the latter position and it is not necessary to allege any more in that respect than that defendant occupied it.

The other three flaws in the indictment all go to the question of loss by the bank. There is no doubt as shown by the above authorities that the federal courts hold that in a case brought under section 5209, *supra,* it is necessary to prove loss by the bank, and if it is necessary that it be proven it must, of course, be alleged as an ultimate conclusion of fact, or else specific facts may be set up from which that conclusion may be drawn.

We have great respect for the decisions of the federal court, but in matters involving the construc-

tion of our own statutes, their opinions, while per-
suasive, are not binding. The essential parts of the
statute of Arizona are, "who willfully misapplies
any of the moneys, funds, or credits . . . with in-
tent . . . to injure or defraud." We have held re-
peatedly that in many classes of statutory offenses
it is only necessary to allege the offense in the lan-
guage of the statute. Of course, in an offense of
this nature, in order to apprise the defendant of
what he is to meet, it is also necessary to set up
the specific acts which it is claimed constitute the
violation of the statute, but if that be done we
see no reason for requiring anything further unless
there be some particular reason therefor.

What is meant in ordinary parlance by the word
"misapply"? We do not feel that the legislature
intended to give any different meaning to it from
that commonly accepted, to wit, to apply wrongly,
to use for wrong purposes. Webster's International
Dictionary. Certainly a purpose positively pro-
hibited by law must be a wrong one.

In the case at bar, the indictment alleges that
the capital stock and surplus of the Farmers & Mer-
chants' Bank was $50,000 and that on the thirty-
first day of March the Arizona Cattle Company, a
corporation, was indebted to the bank in a sum in
excess of twenty-five per cent of the said capital
stock and surplus, and the bank therefore was not,
as a matter of law, permitted to loan any further
sums to said cattle company. This clearly alleges
facts which show that any further loan was illegal,
whether a penalty was annexed thereto or not, and
we hold that a loan prohibited by law must *ipso
facto* be a misapplication of the funds of the bank.

It is true that such illegal loan, though consti-
tuting a willful misapplication, would not of itself
be a personal crime on the part of an officer of the
bank, but when we add to the willful misapplication

that the same was done with intent to defraud, we feel that a crime under the statute has been set forth. It may or may not be true that in some cases, in order to show that money is used for a wrong purpose, it would be necessary to set up facts showing an actual conversion, or loss, but we certainly do not believe that when the particular use of the money or credit is specifically prohibited by law, that anything further is necessary to either allege or prove the willful misapplication, than to show the illegal use. Since the indictment in this case sets forth facts alleging the defendant, with intent to defraud, did aid in applying funds and credit of the bank to an illegal purpose, we think it is sufficient.

The remaining assignments may be divided generally into four classes: First, that there was not sufficient evidence of any conspiracy as avowed by the state; second, that the conviction was based on the uncorroborated evidence of accomplices; third, that the court erred in various instructions; and fourth, that certain specified pieces of evidence were improperly admitted or excluded.

The record shows clearly that the state assumed a far heavier burden than was needful under the law. Defendant insisted, and the trial court and county attorney apparently agreed, that it was necessary the state should prove an actual conversion resulting in loss. But, as we have stated above, where the act constituting the alleged misapplication is by statute made unlawful, the only further element of the offense is the intent to defraud. For this reason some of the alleged errors were truly such, but, since they were in favor of defendant, she cannot claim prejudice thereby.

Where the disputed elements of an offense are the intent, and a conspiracy to defraud, it is plain that

the scope of the evidence must be wide. Intent can only be determined by the acts of the party and his knowledge of the situation when he acts. It was not only permissible, but even necessary for the state to show, as bearing on the intent and the conspiracy, the condition of the cattle company and the bank, the entire history of the transaction complained of, and the circumstances showing the extent of defendant's knowledge thereof.

Assignments of error 5, 6, 7, 9, 10, 13, 14, 16, 17 and 18 are covered by the above statement as the evidence therein complained of falls within these principles. Assignments 19 to 23 raise the question of improper cross-examination of W. J. Kingsbury. We have examined the record and do not find any reversible error therein.

While it was probably error to refuse permission to cross-examine witness Dodson as set forth in assignment No. 24, it was not serious enough to warrant reversing the case, unless prejudice resulted, and, in view of the other evidence admitted, we feel no harm was done. Assignments 8, 11 and 12 are based upon defendant's theory that the evidence does not fairly support the state's allegations of conspiracy between defendants Thornton Jones, Jr., W. J. Kingsbury and W. W. Kingsbury. If it does support the state's contention, the rulings of the trial court complained of in these assignments were correct. If it does not, they were erroneous.

We have examined the record carefully and are satisfied that there was ample evidence, both direct and circumstantial, to show such a conspiracy. It is elementary that if a conspiracy be shown all the acts and statements of each conspirator made in furtherance thereof are admissible against each one of the others. 16 Corpus Juris, 644.

Assignments 25 to 31, inclusive, have been covered by the reasons given for our holding on previous assignments.

Assignment 32 raises a serious question. It is to the effect that the testimony of Thornton Jones, Jr., was uncorroborated, and that therefore, he being an accomplice of defendant, no conviction can be had on his uncorroborated testimony. If the assignment correctly states the facts, there is no doubt that the motion for a directed verdict should have been sustained.

Section 1051, Penal Code of 1913, reads as follows:

"A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence which, in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

This statute has been repeatedly construed in this state. In *Reynolds* v. *State*, 14 Ariz. 302, 127 Pac. 731, it was said, quoting from a California case:

"The corroborating evidence must, of itself, and without the aid of the testimony of the accomplice, tend, in some degree, to connect the defendant with the commission of the offense. It need not, of course, be sufficient to establish his guilt; for, in that event, the testimony of the accomplice would not be needed. But it must tend, in some . . . degree at least, to implicate the defendant. The purpose of the statutes was to prohibit a conviction, unless there was some evidence, entirely exclusive of that of the accomplice, which, of itself, and without the aid of the accomplice, tended to raise at least a suspicion of the guilt of the accused."

The corroborating evidence may be circumstantial (*Leverton* v. *State*, 23 Ariz. 482, 205 Pac. 321),

nor, need any particular testimony of the accomplice be corroborated (*Rain* v. *State*, 15 Ariz. 125, 137 Pac. 555). Applying this rule to the testimony, what do we find? Thornton Jones, Jr., was, of course, an accomplice, so we must, for the moment, disregard his testimony entirely.

It is also claimed that Ray B. Jones and James S. Dodson were accomplices, but is this true? Under our statute:

"All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense or aid and abet in its commission, or not being present, have advised or encouraged . . . are accomplices."

As we have seen, it is essential to the crime charged in this indictment that there be both a misapplication of funds and an intent to defraud. It is necessary, in such cases, that the alleged accomplice has knowledge of the existence of the intent in the minds of the actual perpetrators of the crime (16 Corpus Juris, p. 129), nor is there any presumption as to his knowledge of such intent on their part. *Leslie* v. *State*, 42 Tex. Cr. 65, 57 S. W. 659; *Bibby* v. *State* (Tex. Cr. App.), 65 S. W. 193.

Whatever may be said of Ray B. Jones, it does not appear from the record that Dodson ever participated in the criminal intent necessary to the alleged crime or knew there was one on the part of the alleged conspirators, and therefore his testimony, if legally sufficient, was competent to furnish the necessary corroborating evidence. The record clearly shows it, together with the documentary evidence, certainly would, in the mind of any reasonable man, "tend to raise at least a suspicion of the guilt of the accused."

Assignments 33 to 48, inclusive, deal with alleged error of the court in giving or failing to give vari-

ous instructions. These may be divided into two classes, first, where it is alleged that the court misinstructed the jury as to the law, and, second, where it is alleged that it failed to give proper instructions.

It must be remembered that instructions are to be construed as a whole. It is rarely, indeed, in a long and difficult case, some provision of the instructions cannot be taken and, when considered apart from the balance, error predicated thereon. This is not, in our opinion, a proper way to view them, and, in passing upon the various alleged errors in the court's instructions, we shall at all times consider the general effect, taken in connection with that of the particular instructions given or refused.

It is first claimed that the court did not properly define the crime with which appellant was charged, ánd that it was the duty of the court to give such instructions. With the doctrine that the jury must be told of the facts it is essential to find, in order to return a verdict of guilty, we agree. As a matter of fact, it is in our opinion the most vital part of any instructions in a criminal case. If a jury does not know what facts are legally essential to establish guilt in a given case, it is impossible for them to do justice according to law. It is not necessary, however, that the instructions of this nature be given in any particular form. So long as the instructions as a whole clearly and definitely apprise the jury of what ultimate facts they must find to return a verdict of guilty it is sufficient, and, while it is preferable that this be done in the affirmative, it is sufficient if it be in the negative. As we have before stated, the essential ingredients of the particular crime are the intent to defraud, and the misapplication of the funds. The jury was clearly instructed that the defendant must have had the intent to defraud the bank, that she must have made

the effort to do so or have participated therein, and that the transaction referred to must have resulted in a loss to the bank, and that each and every one of these elements must concur, or they must acquit the defendant.

While the court did not specifically define the offense of misapplication of funds, it told the jury they must find every fact necessary to sustain a conviction, concerning which there was the slightest dispute, and added other unnecessary ingredients thereto, thus increasing the burden on the state far beyond what the law in this case required. Of this defendant cannot complain.

The instructions complained of in assignments 35, 36, 37 and 38, in our opinion, either correctly stated the law when taken into consideration with all the other instructions, or were more favorable than defendant was entitled to. The refusal to give the instructions set forth in assignments 40 to 47, inclusive, was correct. The instruction complained of in assignment 48, given as modified, correctly states the law, and we do not feel it had any tendency to confuse the jury. Assignments 39 and 49 are covered by our opinion on the other assignments discussed herein.

We realize the importance of this case, both to defendant and to the state at large, and for this reason have not only considered the briefs filed, but have carefully read the entire reporter's transcript.

Upon the whole case we are satisfied that it was fairly shown defendant willfully, and with intent to defraud the Farmers' & Merchants' Bank, entered into a conspiracy with W. J. Kingsbury and Thornton Jones, Jr., to misapply the funds of said bank, and that such misapplication was carried out. We are further satisfied that no error was committed by the trial court prejudicial to defendant under the law, or which could in any manner have affected

27 Ariz.—20

the verdict, and that on the whole case substantial justice has been done. Section 22, article 6, of the Constitution specifically requires that no cause shall be reversed when this is true.

The judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.