224 P.2d 205

**STATE v. MILLER.**

No. 1006.

Supreme Court of Arizona.

Decided Nov. 20, 1950.

Krucker & Evans, of Tucson, for appellant.

Fred O. Wilson, Atty. Gen., Wilbert E. Dolph, Jr., Asst. Atty. Gen., for appellee.

PER CURIAM.

Defendant John L. Miller, appellant, was charged with committing two felonies; to wit, the act of sodomy on September 26, 1949, lewd and lascivious acts on May 24, 1949, and a misdemeanor of contributing to the delinquency of a minor on May 25, 1949. These acts all involved the same boy, a minor, aged 16, hereinafter referred to as the boy or the accomplice. After a preliminary hearing in the justice court an information was filed against defendant and on his plea of not guilty the case was set for trial before a jury, March 14, 1950.

Before trial defendant made a challenge to the jury panel which was overruled by the trial court. Defendant made a motion for a directed verdict both at the close of the state's case and at the close of his case. Both were denied. The jury found defendant guilty on all three charges; he was sentenced to four years each on the two felony charges, sentences to run concurrently, and to one year in the Pima County jail and $300 fine on the misdemeanor count, the latter jail sentence to commence upon the completion of the sentences imposed for the felonies.

Defendant appeals and assigns 5 errors of the trial court which may be summarized to present 3 issues for this court to decide:

(a) That the jury summoned to attend the trial of this case was illegally summoned.

(b) The court permitted a police detective, one of the state's witnesses, to answer the following:

"Q. What, if any, further conversation did you have with him (defendant) on this subject?

"A. I made a remark to Mr. Miller that if someone accused me of that crime I would tear the roof off the building and stand up and deny it.

"Mr. Reddington: We object to that as being an expression of his opinion, and he is entitled to it, but this is no place for it.

"The Court: Overruled."

(c) That the court erred in allowing the matter to go to the jury when there was no evidence to connect the defendant with the crime except the testimony of the accomplice.

█ The jury panel that was available for the trial of this and other cases set for trial was regularly and duly summoned, exemptions made and the qualifying jurors sworn, all in accordance with Chapter 37, A.C.A.1939, as amended. The testimony of the clerk of the court and the bailiff, and the proposition of law that a public officer is presumed to have done his duty in the absence of evidence to the contrary, all attest to the regularity of the proceedings. Wright v. Leyda, 67 Ariz. 241, 194 P.2d 441; Donaldson v. Sisk, 57 Ariz. 318, 113 P.2d 860.

Counsel for defendant in his argument before this court concedes the above but raises the objection that the jurors called for this particular case were not summoned in accordance with sections 37-110 to 37-114, A.C.A.1939. These sections provide that the sheriff shall summon the jurors by personally serving upon them, or a person over the age of 16 at their place of residence, a summons to report for jury duty on a date and time certain. In the instant case it is undisputed that the following procedure was followed: After the whole panel was duly summoned, qualified and sworn, the clerk of the court turned the names of the jurors over to the bailiff who, under the instructions of the trial judge, acted as jury commissioner in charge of providing juries for cases set for trial. See section 19-312, A.C.A. 1939, Superior Court Bailiffs. The bailiff then placed the names of all the jurors in a box and kept it in his custody and control, with access thereto to the bailiff of Division No. 2 (there being two divisions of the Superior Court in Pima County) for the latter's use in calling jurors for trial of cases in Division No. 2. The bailiff in the instant case, upon being instructed by the trial court to procure a jury for the trial of this case, drew names from the box by lot until he had drawn a sufficient number, considering "challenges for cause" and "peremptory strikes" for both parties at the time of trial. The bailiff himself then attempted to reach

the jurors by telephone or other means but not by a personal summons through the sheriff. If the bailiff was unable to contact the juror, he would then draw another name from the box by lot and continue said drawing until he had a sufficient number of jurors to attend the hearing of the particular case involved.

In the instant case, 34 jurors were called and in attendance. Of these, 24 were sworn to answer on voir dire for further qualification to try this case. From this latter group, 12 jurors were finally selected and sworn for the actual trial of this case.

The question to be answered is: Does a party litigant have the right to require the presence of the full jury panel and must the individual juror be summoned in person by the sheriff on the date the case is set for trial?

■ Our answer is unequivocally, no! When a jury panel has been regularly called, summoned, qualified and sworn, in accordance with chapter 37, A.C.A.1939, as amended, as was the jury panel from which this jury was drawn, then such a panel is a legal jury panel. The mere fact that the whole jury panel of 175 members, as there were in this one, is not again personally summoned through the sheriff and present when a case goes to trial is not such an irregularity that would disqualify a fair, representative group drawn by lot from the panel to try the case. All that a defendant or party litigant is entitled to is a fair and impartial jury to try his case. In the instant case no claim is made by the defendant that he was prejudiced in any way. He is merely insisting on an assumed technical, legal right to have the entire panel present. We feel the record shows that his rights to a fair and impartial jury have not been invaded and that is all that is due him. State v. Pelosi, 68 Ariz. 51, 199 P.2d 125; Conner v. State, 54 Ariz. 68, 92 P.2d 524; Kinsey v. State, 49 Ariz. 201, 65 P.2d 1141; Lawrence v. State, 29 Ariz. 247, 240 P. 863; Midkiff v. State, 29 Ariz. 523, 243 P. 601.

To decide otherwise would put a useless and onerous burden on the clerk, the sheriff and the court, to say nothing of the needless expense to the county in summoning 175 jurors when only 24 are needed. Additionaly it would be a hardship for the jurors to require them to appear day after day, only to be excused because their presence was superfluous. The judges of this court, all having been trial judges, know the task involved in properly drawing a jury panel and realize that if jury duty was more burdensome than it is, albeit it is both a duty and a privilege, it would be an even greater task since it would entail the filing of more exemptions. No fairer method of calling jurors could be devised than selecting their names by lot from a legally constituted jury panel until a sufficient number of jurors were on hand to try a particular case such as was done in the instant case.

144

As to the admissibility of the question and answer of the witness, police detective Hearon, it will be noted that the objection came after the question was answered and was overruled. Since there was no motion to strike the answer from the record, the objection thereto is deemed waived. Azbill v. State, 19 Ariz. 499, 172 P. 658; Flowers v. State, 27 Ariz. 70, 229 P. 1028; Midkiff v. State, 29 Ariz. 523, 243 P. 601.

The last and most important assignment of error goes to the proposition that there was no corroborating evidence of the testimony of the accomplice. The accomplice testified that the defendant had committed acts of sodomy upon him a number of times and as charged in the information filed against defendant. Section 44-1819, A.C.A.1939, provides that no conviction of an accused can be had on the testimony of an accomplice unless it is corroborated "* * * by other evidence which, in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense;. * * *."

The answer to that can only be had through a close scrutiny of the evidence.

The father of the accomplice testified that a few days after his son disappeared from his home in the latter part of September, he recognized the sound of the motor in a car that frequently brought his son home at nights; upon hearing the sound he left the porch of his house and ran down the car of the defendant, a model "A" Ford, and in answer to the question of whether any conversation with defendant then took place said, "No I took his license number and gave him a good look, and went down to the police station." After the father learned of defendant's identity, he and his wife called on defendant. He further testified that the defendant was cooperative and said that he too would like to find the boy, that he was sure the boy wouldn't be cold and hungry and gave assurance that he, the defendant, could help because the boy was sure to write him. From thenceforth, the father and defendant were in touch with each other every day for a week or 10 days when defendant showed the father a letter from the boy which was allegedly postmarked from Los Angeles, California. The defendant told the father that as soon as he located the boy he would go after him but wouldn't promise to bring him back because they had great confidence in each other. In answer to a question on the matter of that confidence between the boy and the defendant, the father testified the defendant said, "He (the boy) is one of my people."

Within a period of 2 weeks or so, the boy returned home and was detained by the juvenile authorities. The defendant in the company of the boy's parents visited the boy and in describing the visit, the father answered as follows:

"Q. What was the conversation that went on between yourself and your son

and John Miller, if any, on those various occasions? A. There wasn't any conversation that went on between my son and I, but there was always a conversation between John Miller and my son, in a whispered voice."

Defendant Miller, a man 44 years of age and a university graduate, took the stand in his own behalf and denied any homosexual acts with the boy. However, defendant did corroborate some of the testimony of the accomplice to some extent. He admitted that during the period, July 1 to October 1, he and the boy were together about 24 times; that he read a book by Oscar Wilde, that the boy had brought to him. The boy previously testified that defendant introduced him to Oscar Wilde's writings and that they had read Wilde's books together. Defendant admitted that he was acquainted with one Jesse Rivera, an admitted homosexual who testified in this case and was then in the state penitentiary; that just before his trial he called on Rivera's sister for the purpose of ascertaining whether or not Rivera had been forced to confess his acts which resulted in Rivera's incarceration, the reason for his interest being to see whether fair play had been done. Defendant denied any paternal interest in the young accomplice but insisted that his friendship was merely one of sympathy for a lonesome boy. He did admit however that upon learning of the boy's disappearance he did all he could to help the parents locate him; that

he received a letter from the boy from Los Angeles; that he was expecting another letter and that he took a change of the boy's clothes and was ready to go to Los Angeles by bus to return him home.

Upon cross examination the boy had admitted committing homosexual acts with one McCulloch. Defendant admitted knowing said McCulloch in one instance and for the purpose of excusing himself to the boy for not aiding McCulloch's release from jail on bail, denied knowing McCulloch. Upon his being questioned by a juror as to the apparent discrepancy, the defendant corrected his second statement and said he did know McCulloch but not well enough "to go his bail."

■■ A fair interpretation of the testimony of the boy's father and of the defendant in the light of the surrounding circumstances is sufficient evidence to corroborate the testimony of the young accomplice.

These facts are undisputed. The defendant was acquainted with other homosexuals; he was interested in the welfare of one such who was incarcerated in the penitentiary; he denied on one occasion but on another admitted he knew one McCulloch who also associated with the boy in such homosexual acts, but refused to offer any help or to proffer any sympathy for said McCulloch. The defendant and boy visited at least 24 times in a period of 3 months. They had no other common interest as shown by the testimony. The

defendant, when the boy was away from home, was the only person who received any mail from him. Defendant's interest in the boy at this time was unusual, in that he watched for mail daily, he visited the father of the boy daily, he continually reassured the parents of the boy's welfare. He took the boy's clothes and made ready to go to California to get the boy and told the parents he would get the boy because they had great confidence in each other. Those circumstances, together with defendant's age as contrasted with the boy's, and considering the defendant's own disclaimer of having any paternal interest in the boy, all amount to sufficient corroboration which the jury could properly consider.

In addition to the foregoing there was the boy's father's testimony of his experience and conversations with the defendant; the sound of defendant's car driving around his house and his final identification of defendant through that sound; all attest to circumstances surrounding this case that would tend to corroborate the testimony of the young accomplice so far as the act of sodomy is concerned. The corroborating evidence need not be sufficient in itself to establish defendant's guilt but must tend in a slight degree at least to implicate accused. State v. Cassady, 67 Ariz. 48, 190 P.2d 501; Duarte v. State, 48 Ariz. 356, 61 P.2d 1015.

Corroboration need not be by direct evidence, but the entire conduct of the defendant may be looked to for corroborating circumstances and if from those circumstances, his connection with the crime may be fairly inferred, the corroboration is sufficient. People v. Hoyt, 20 Cal.2d 306, 125 P.2d 29; Kingsbury v. State, 27 Ariz. 289, 232 P. 887.

Defendant's conviction of contributing to the delinquency of a minor can stand without corroboration because the minor could not be an accomplice to the crime of contributing to his own delinquency. The test whether one is an "accomplice" is whether he could be informed against for the same crime of which the defendant is accused. State v. Green, 60 Ariz. 63, 131 P.2d 411.

Defendant's conviction of committing lewd and lascivious acts on May 24, 1949, cannot stand because there is no corroboration of the accomplice's testimony to the effect that the defendant and accomplice were acquainted on that day, and his conviction on that count is reversed.

Judgment affirmed as to conviction of committing sodomy and of contributing to the delinquency of a minor.

LA PRADE, C. J., and UDALL, STANFORD, PHELPS and DE CONCINI, JJ., concur.