316 P.2d 941

**STATE of Arizona, Appellee,**
v.
**L. C. BAGBY, Appellant.**
No. 1103.

Supreme Court of Arizona.
Oct. 29, 1957.

John M. Levy, Phoenix, Emmett R. Feighner, Phoenix, of counsel, for appellant.

Robert Morrison, Atty. Gen., Charles C. Stidham, County Atty., Lawrence C. Cantor, Deputy County Atty., Phoenix, for appellee.

PHELPS, Justice.

Defendant L. C. Bagby was convicted of the crime of forgery, and appeals from the judgment and sentence; from the court's order denying his motion for a new trial, and from all intermediate orders entered therein.

The facts are that defendant was employed by Dr. Howard M. Purcell for a period of four or five weeks beginning sometime in August, 1956. During the period of his employment defendant did janitor work in the doctor's office and also aided in the installation of certain refrigeration units in apartments then owned by the mother of Dr. Purcell and in which Dr. Purcell's office was located. The doctor's secretary, Mrs. Feickert, had custody of his checkbook originally containing four hundred blank checks. Her custom during this period was to write his checks on this account and he would sign them. The checkbook was kept on a shelf underneath the desk to the right of the knee hole in the desk. Only she and Dr. Purcell were supposed to know where this checkbook was kept.

According to the testimony of Mrs. Feickert defendant had seen her remove the checkbook from this location more than once in order to write him a check for his wages for the week. Defendant denied this. It was developed later that blank checks numbered between 226 and 233 had been removed from this checkbook. When cleaning up the office defendant had the opportunity to remove blank checks from said checkbook. Check No. 231 removed from said book was presented to the J & Y Food Market by one Willie Newkirk and another man on October 12, 1956 and was cashed by said market. The check was not honored, and Dr. Purcell was notified. Upon examination the doctor then first discovered that six blank checks, including check No. 231, had been removed from his checkbook.

Thereafter a charge of forgery was preferred against Willie Newkirk, L. C. Bagby, and Helen Nicholson. Newkirk pleaded guilty, the cause was dismissed as to Nicholson, and defendant went to trial with the result above stated.

Defendant has presented four assignments of error for our consideration. As-

signment I is predicated upon the refusal of the court to order an instructed verdict for defendant at the close of the State's case. Assignment II is based upon the court's denial of defendant's motion for a new trial. Both assignments are based upon the ground that the testimony of accomplices, Newkirk and Nicholson, was uncorroborated, and under the provisions of A.R.S. § 13–136, a conviction may not be had in the absence of such corroboration. The above section provides that:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

█ There is no doubt that the requirements of the above statute must be met. We have had before us many times in cases of this kind the question of both the character and the quantum of evidence necessary to meet its requirements. We have held in a number of cases that circumstantial evidence is a sufficient corroboration of the testimony of an accomplice if it, in itself and without aid of the accomplice, tends to connect the defendant with the commission of the offense charged. Kingsbury v. State, 27 Ariz. 289, 232 P. 887; State v. Cassady, 67 Ariz. 48, at page 59, 190 P.2d 501; State v. Miller, 71 Ariz. 140, 224 P.2d 205.

In the instant case we have the following corroborating circumstances: (1) defendant worked for Dr. Purcell four or five weeks in August and September; that he did janitor work for him in cleaning up the office where Dr. Purcell kept his checkbook from which the check here involved, together with five other blank checks, were removed; (2) defendant was paid in the office by check and according to the doctor's secretary saw where she kept the checkbook (he of course cleaned up the office when the office staff was not present); (3) he had the opportunity to take the blank checks; (4) neither Newkirk nor Nicholson had ever been to Dr. Purcell's office nor did they know him or know where his office was located; (5) Newkirk and Nicholson were acquainted with both Bagby and his wife and visited in each others' homes; (6) Bagby and Newkirk worked together at Cudahy's and two or three other places; they had known each other, according to Newkirk, about nine months, and according to Bagby, about four months; (7) neither Newkirk nor Nicholson ever knew anyone other than Bagby who had worked for Dr. Purcell; (8) Newkirk cashed check No. 231 removed from Dr. Purcell's checkbook at the J & Y Food Market; (9) another man was with him at the time who had a

scar on his face similar to a scar on defendant's face; (10) the Chinese boy who cashed the check was impressed by the scar to the extent that he wondered how he got it; (11) on cross-examination he stated it was identical with the scar on defendant's face although he declined to definitely identify defendant as the same man who was with Newkirk when he cashed the check.

We believe the circumstances above related, standing alone and without any aid whatsoever from the testimony of the accomplices, tend to connect defendant with the commission of the offense. The record does not show that any other channel has been shown through which the blank checks torn from Dr. Purcell's checkbook could have reached Newkirk and Nicholson. We believe that the minds of reasonable men could not fail to agree that the circumstances above stated create more than a suspicion of defendant's connection with the offense charged against him. We have repeatedly held that section 13–136, supra, is fully satisfied if the corroborating testimony in such cases raises a suspicion of the guilt of the accused. Leverton v. State, 23 Ariz. 482, 205 P. 321; State v. Cassady, supra, and State v. Miller, supra.

Assignment III charges misconduct of the county attorney in his argument to the jury which defendant claims amounted to prejudicial error. Counsel asserts that the county attorney stated in substance as follows:

"In the Brinks case the defendants were convicted on the testimony of accomplices, wherein the defendants were sentenced to life imprisonment."

We find nothing in the transcript of the argument like the above quotation but will quote what we do find which is as follows:

"Newkirk is ready to pay his debt to society. Because the girl turned State's evidence under the law, the case was dismissed as to her. There are certain cases and certain times, this isn't the, as serious, perhaps, as the Brinks' robbery, but it took someone to turn the State's evidence; there he got a life sentence; obviously, the Legislature knows about it, they provided for such a honorable law, it's done. And proper."

We have never understood why prosecuting attorneys mention other cases in their argument. They serve no useful purpose. They have no rightful place in such arguments, and the practice is condemned by us. But the statement quoted above, which constitutes the only reference in his argument to the Brinks case, is clearly harmless. Even in the absence of the instruction to disregard it given by the trial judge, the reference could not possibly have created any prejudice against defendant.

Assignment IV is grounded (1) upon the ruling of the court overruling defendant's objections to the testimony of the witness Gloria Feickert because her name was not endorsed on the back of the information, and (2) upon the ground that the court denied defendant's motion for a continuance. As was said in State v. Cassady, supra, 67 Ariz. at page 54, 190 P.2d at page 505:

"* * * The rule is that 'No continuance shall be allowed because of the failure to endorse any of the said names unless such application was made at the earliest opportunity and then only if a continuance is necessary in the interest of justice.' * * * A person whose name is not endorsed is not absolutely disqualified from being a witness."

In the above case defendant's counsel had been informed the day before trial of the names of the witnesses which had not been endorsed on the information. Upon this showing the trial court overruled the objection to the witnesses' testimony and also denied defendant's request for a recess to examine the witnesses. The court stated then that if defendant needed a recess to meet the testimony after the witnesses had testified, it would be granted. No such request was thereafter made, and the ruling of the trial court was upheld.

In the instant case counsel for defendant was verbally informed on December 14 that the State would call Dr. Purcell's secretary as a witness at the trial on December 19th. He also mailed a notice to defendant's counsel on the same day postmarked as of December 15, but it did not reach counsel for defendant until December 18, one day before the trial. No attempt was made by counsel to contact the witness nor did he move for a continuance until the date of trial. For the reasons above stated we hold there is no merit to assignment IV.

Judgment affirmed.

UDALL, C. J., and WINDES, STRUCKMEYER and JOHNSON, JJ., concurring.