369 P.2d 917

**STATE of Arizona, Appellee,**

v.

**Philip SHELDON, Appellant.**

No. 1208.

Supreme Court of Arizona.

En Banc.

March 14, 1962.

Rehearing Denied April 17, 1962.

Thomas J. Croaff, Jr., and Louis L. Zussman, Phoenix, for appellant.

Robert W. Pickrell, Atty. Gen., Stirley Newell, Asst. Atty. Gen., Charles N. Ronan, County Atty. of Maricopa County, Phoenix, for appellee.

UDALL, Vice Chief Justice.

Defendant appeals from his conviction under A.R.S. § 13–652 (1956) [1] for committing a lewd and lascivious act (fellatio) upon the person of a complaining witness, a youth fifteen years of age at the time of the offense.

The boy, whose first name (Harold) only will be mentioned herein, testified that on a night early in June of 1960 he first met the defendant in a Phoenix bus station. The defendant introduced himself as Dale Murphy, age 18, and proposed that they buy some beer. After purchasing the beer at a local tavern defendant drove Harold to a deserted spot on Bell Road north of Phoenix. Harold, who had never tasted beer before, drank four of the six cans of beer purchased. Thereafter defendant committed an act of fellatio upon the boy. The act of oral copulation lasted from ten to fifteen minutes and made the boy feel "sort of sick to * * * [his] stomach." Defendant then drove Harold to a drive-in restaurant before taking him home at 1:00 a. m. the following morning.

Harold next saw the defendant about a month later when, early in the evening of July 6, 1960, defendant asked Harold if he wanted a ride home from work. Harold first refused but then accepted the invitation and was allowed to do the driving "around Phoenix" for "an hour and a half or two hours." Thereafter defendant purchased six cans of beer "in a container" at the same tavern and again drove Harold out to Bell Road. This time defendant drank

---

1. "A person who wilfully commits, in any unnatural manner, any lewd or lascivious act upon or with the body or any part or member thereof of a male or female person, with the intent of arousing, appealing to or gratifying the lust, passion or sexual desires of either of such persons, is guilty of a felony punishable by imprisonment for not less than one nor more than five years."

most or all of the beer after which he again performed an act of oral copulation upon Harold.

Defendant and Harold then picked up one J. R., a friend of Harold's, and drove to Wickenburg, Arizona arriving there at "1:30 or 2:00 o'clock" on the morning of July 7, 1960. The three had "supper" at a Wickenburg restaurant before returning to Phoenix for "a hamburger and a coke" at a drive-in. J. R. was then taken home and Harold was again allowed to drive the car, which he thereafter parked on a street in downtown Phoenix.

Seeing Harold and defendant in the parked car at 4:00 a. m. Phoenix police officers Kavanaugh and Chapel questioned the pair, searched the car and found the smashed beer carton. Defendant represented to the police that he was an eighteen-year-old named Dale Murphy. It was only when the officers then requested and examined defendant's license that Harold first learned defendant was 27 and named Philip Sheldon. The officers then indicated to defendant that he was free to go but that they were going to take the boy to his home. When Harold was in the hands of the police and defendant started to drive away Harold told the officers, "That fellow is a queer." Defendant was then brought back to the scene of the questioning, whereupon Harold told the officers of both instances of fellatio described above.

Thereafter Harold and the defendant were taken to the Police station for further questioning. Later in the morning (9:00 a. m.) police sergeant Nelson questioned defendant regarding the incidents of the night before. Defendant then told Nelson that he had gone driving with Harold north of Phoenix, that J. R. had been picked up and taken to Wickenburg and back, and that Harold had been driving the car. And in answer to Nelson's questions as to homosexual acts defendant "said that he had no sexual desire for women, that men were attractive to him * * * that possibly Harold had reason to believe he was queer." Officer Chapel also interrogated defendant at 9:00 a. m. on July 7, 1960. Defendant responded to Chapel's questions as to "tendencies toward other men" by saying that "I probably have some tendencies, but you probably do too. Everyone has at one time." There was no objection made to such testimony at the trial.

The only witnesses at the trial were Harold and the three policemen, J. R. having gone to California. Defendant neither testified nor presented any evidence in his own behalf.

The sole "ground of appeal"[2] is that: "The court erred in refusing to direct a verdict for the defendant." And in support thereof defendant argues (1) that the com-

2. Ariz.Sup.Ct.R. 20, 17 A.R.S.

plaining witness was an accomplice and (2) that his testimony was not sufficiently corroborated to support the conviction.

■ . Whether a witness is an accomplice of the accused is generally determined by asking if the witness could be informed against for the same offense with which the accused is charged. State v. Martin, 74 Ariz. 145, 150–151, 245 P.2d 411, 414 (1952) (Arizona authorities collected.) And in sexual offenses it is particularly important to consider the distinction between consent and assent or mere submission respecting the conduct of the pathic. In this regard see People v. Dong Pok Yip, 164 Cal. 143, 147, 127 P. 1031, 1032 (1912) in which the California Supreme Court stated:

> "It may be admitted that the evidence shows that the boy was ignorantly indifferent and passive in the hands of the defendant, event to the point of submission; but there is a decided difference in law between mere submission and actual consent. Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice, to do something proposed by another. 'Consent' differs very materially from 'assent.' The former implies some positive action and always involves submission. The latter means mere passivity or submission which does not include consent.

\* \* \* \* \* \*

> "In cases of the character under discussion, the age and mentality of the subject of an indecent assault is important, and should always be considered in determining the presence or absence of consent."

■ ■ And once it is determined that the complaining witness "of his own volition participated in the act of fellatio he would in law be an accomplice \* \* \*." State v. McDaniel, 80 Ariz. 381, 384, 298 P.2d 798, 800 (1956). In this case, however, we cannot say that on the record presented the complaining witness was an accomplice as a matter of law. Accordingly, the trial court was correct in submitting that question to the jury under proper instructions. Cruz v. State, 40 Ariz. 436, 440, 14 P.2d 247, 248 (1932). Cf., State v. Gutierrez, 81 Ariz. 377, 381, 306 P.2d 634, 636, appeal dismissed, 355 U.S. 17, 78 S.Ct. 79, 2 L.Ed.2d 23 (1957).

Originally at common law an unindicted accomplice was permitted to testify against the accused " \* \* \* partly on the ground that turpitude, though self-confessed, was no hindrance unless there had been a conviction of crime \* \* \*." 2 Wigmore, Evidence § 526 at 619 (1940). And when it was finally settled that even a convicted accomplice was competent to testify, his oath was regarded as sufficient as that of any other witness. 7 Wigmore, Evidence § 2056 at 312 (1940). Later, however, it became

the practice of trial judges, in the exercise of their common law function of advising the jury as to the weight properly given to different types of evidence, to caution the trier of fact to consider such testimony "with grave suspicion * * *." Further, the jury members were admonished "that they *ought* not to convict unless the evidence of the accomplice is corroborated * * *." Rex v. Feigenbaum, 1 K.B. 431, 433 (1919). (Emphasis added.)

But what had begun as a "counsel of caution" to be given at the discretion[3] of the trial judge has become by statute a rule of law in many American jurisdictions[4] including Arizona. Thus, A.R.S. § 13–136 (1956) provides that:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice,

tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The above provision was taken from what is now Section 1111 of the California Penal Code, a provision which has been in force in that state since 1851. This California progenitor of A.R.S. § 13–136 was construed in People v. Ames, 39 Cal. 403, 404 (1870) to mean that:

"* * * the corroborating evidence must, of itself, and without the aid of the testimony of the accomplice, tend, in some degree, to connect the defendant with the commission of the offense. It need not, of course, be sufficient to establish his guilt; for, in that event, the testimony of the accomplice would not be needed. But it must tend, in some slight degree at least, to implicate

---

3. "The undoubted practice of sharply, and often indignantly, denouncing the worthlessness of the unconfirmed testimony of a witness who acknowledged himself a knave, and that he was testifying against his comrades in the hope of obtaining by this means a pardon for his own crimes, was natural, lawful, and just. And the form, force, and extent of such denunciation was wholly discretionary with the judge, according to the circumstances surrounding each witness." State v. Carey, 76 Conn. 342, 347–348, 56 A. 632, 634 (1904).

4. 7 Wigmore, Evidence § 2056 at 319–22 (1940). Dean Wigmore's explanation for this development is that in most American jurisdictions the trial judge is pre-

cluded from expressing an opinion to the jury on the weight to be given to the evidence of a given witness. See Ariz. Const. art. 6, § 12, A.R.S. "The judge was forbidden to contribute to the jury's aid any expression of opinion upon the weight of evidence in a given case. Unless there was a rule of the law of Evidence upon the subject of an accomplice's testimony, he could not in a given case advise them to refuse to convict upon the uncorroborated testimony of an accomplice. The makers of this innovation upon established trial-methods were thus obliged to turn into a rule of law the old practice as to accomplices, if they wished to retain its benefit at all." 7 Wigmore, Evidence § 2056 at 322 (1940).

the defendant. The purpose of the statutes was to prohibit a conviction, unless there was *some* evidence, entirely exclusive of that of the accomplice, which, of itself, and without the aid of the accomplice, *tended to raise at least a suspicion of the guilt of the accused.*" (Emphasis added.)

This passage from the Ames case was first quoted with approval by this court in Reynolds v. State, 14 Ariz. 302, 303, 127 P. 731, 732 (1912). Before Reynolds, however, the California Supreme Court in People v. Thompson, 50 Cal. 480 (1875) had seemingly limited the Ames rule by saying that:

"* * * we did not mean to lay down [in Ames] the rule, that if the corroborating evidence sufficed to raise merely a *suspicion* of the defendant's guilt, and nothing more, that it would be a sufficient corroboration within the meaning of section 1111." 50 Cal. at 481–482.

Nevertheless, and without reference to the Thompson case, the Ames passage has repeatedly been quoted with approval by this court as the proper interpretation of

A.R.S. § 13–136.[5] What then does the phrase "at least a suspicion of the guilt of the accused" mean in regard to the sufficiency of evidence necessary to corroborate the testimony of an accomplice in a given case? Standing alone these words mean little or nothing. We think they must be construed in light of the statutory requirement that such other evidence must only *tend "to connect* the defendant with the commission of the offense" and the common law purpose of the rule requiring corroboration. Plainly the statute requires more than that after all of the evidence is in the jury be left with no more than a mere "suspicion" of the defendant's guilt as related by the accomplice. The corroborative evidence, as the statute commands, must do more than show that a crime has been committed by someone. Leverton v. State, note 5 supra. The language of the statute, however, is "tends to connect." It does not say or require that such corroborative evidence must directly connect the defendant with the offense.

Moreover the concern of the law in such cases is with the "quality" not the

5. State v. Bagby, 83 Ariz. 83, 86, 316 P.2d 941, 943 (1957); State v. Thomas, 79 Ariz. 355, 359, 290 P.2d 470, 472 (1955); State v. Cassady, 67 Ariz. 48, 58–59, 190 P.2d 501, 508 (1948); Turley v. State, 48 Ariz. 61, 79, 59 P.2d 312, 319–320 (1936); Kingsbury v. State, 27 Ariz. 289, 302, 232 P. 887, 891, rev'd on other grounds, 28 Ariz. 86, 235 P. 140 (1925);

Leverton v. State, 23 Ariz. 482, 484, 205 P. 321, 322 (1922). In Reynolds itself this court, after quoting the Ames passage, stated that: "without doubt [section 13–136] was adopted from California with the construction placed upon it prior to its adoption." 14 Ariz. at 304, 127 P. at 732.

"quantity" of the accomplice's testimony.[6] The statute's (Section 13–136) primary requirement is that there be some evidence in the case which is legally sufficient to lend credibility to the statements of the accomplice. It must be evidence which will afford the trier of fact a sufficient basis for *believing* the testimony of the accomplice. But it need not corroborate any particular part of the accomplice's testimony. Rain v. State, 15 Ariz. 125, 137 P. 550 (1913). See also Kingsbury v. State, note 5 *supra*. Nor need the "corroboration * * * be by direct evidence [for] the entire conduct of the defendant may be looked to for corroborating circumstances and if from those circumstances, his connection with the crime may be fairly inferred, the corroboration is sufficient." State v. Miller, 71 Ariz. 140, 146, 224 P.2d 205, 209 (1950).

Therefore, to the extent that the Arizona standard for the sufficiency of corroborative evidence may be less exacting than that of California, the difference, if there be one, is one of emphasis respecting the purpose of the corroboration statute (Section 13–136), i. e.—on lending credence to the testimony of the accomplice rather than on showing the accused's direct participation in the crime. Such rule more fully comports with the common law purpose of the cautionary instruction.[7] Further, society is better protected in cases such as this one where only the accused and his accomplice witness the commission of the crime. And the accused is fully protected, as he has always been, by the giving of the cautionary instruction and the requirement that the corroborative evidence be legally sufficient to convince the jury of the accomplice's veracity and in some way tend to connect the accused with the commission of the crime.

In the last analysis, however, the facts of each case must govern. Compare State v. Thomas, 79 Ariz. 355, 290 P.2d 470 (1955), with State v. McDaniel, 80 Ariz. 381, 298 P.2d 798 (1956), and State v. Miller, 71 Ariz. 140, 224 P.2d 205 (1950). In the

6. "The witness swearing directly to the prisoner's guilt, that guilt is established if the witness be credible. What, therefore, is required is to throw something, no matter of what nature, into the opposite scale, which will serve as a counterpoise to the impeachment of the witness' credit arising from the character in which he appears; something that will improve the *quality* of the proof which has been given by the accomplice; and *that* something may be anything which induces a rational belief in the mind of the jury that the narrative of the accomplice is in all respects a correct one." Chief Baron Joy, Evidence of Accomplices 8 (1844) quoted in 7 Wigmore, Evidence § 2059 at 328 (1940).

7. "But the fact of the witness's being an accomplice, accessary, or principal, detracts very materially from his credit * * * and it is always considered necessary, (although in strict law it is not essential * * *) in order to induce the jury to credit his testimony, to give other evidence confirmatory of, at least, some of the leading circumstances of his story from which the jury may be able to presume that he has told the truth as to the rest." 2 Hale, Pleas of The Crown 280 (1847).

present case the boy Harold's testimony was corroborated by that of the arresting officers' with respect to the time of arrest, beer carton in the car and defendant's feigned identity. And this court has previously ruled that admissions of homosexual tendencies to police interrogators may be corroborative of the commission of sex offenses. State v. McDaniel, 80 Ariz. at 389, 298 P.2d at 803. Finally; the fact of the complaining witness' prompt complaint to the officers when first beyond the reach of defendant may also be corroborative. State v. McDaniel, 80 Ariz. at 389, 298 P.2d at 803; People v. Brown, 71 Cal.App.2d 669, 163 P.2d 85 (1945).

 The jury were properly instructed as to the requirement for corroboration and that the testimony of an accomplice should be "viewed with caution." R.T. 79. If they believed Harold was an accomplice we hold there was sufficient evidence, aside from his testimony, to provide them with a rational basis for also believing that he told the truth and that defendant was in fact guilty as charged.

For the reasons indicated above there was no error and the conviction must be affirmed.

BERNSTEIN, C. J., and STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., concur.